416 F.2d 449
 Albert Edwin CHURCH, II, Administrator of the Estate of
Harold O. Church, Plaintiff-Appellant,
v.
Harold E. HEGSTROM, State Jail Administrator, Charles
Baikal, Supervising Captain, M. Martin Gould,
M.D., and Patrick J. Hogan, Correctional
Director, Defendants-Appellees.
 No. 48, Docket 32868.
 United States Court of Appeals Second Circuit.
 Argued Sept. 19, 1969.
Decided Oct. 9, 1969.
 
 Herbert Watstein, Bristol, Conn. (Julius Watstein, Watstein & Watstein, Bristol, Conn., on the brief), for appellant.
 Raymond J. Cannon, Asst. Atty. Gen., Conn. (Robert K. Killian, Atty. Gen. of Conn., on the brief), for appellees Harold E. Hegstrom, Charles Baikal and Patrick J. Hogan.
 Brian L. Hollander, Hartford, Conn. (Thomas J. Groark, Jr., Day, Berry & Howard, Hartford, Conn., on the brief), for appellee Dr. M. Martin Gould.
 Before MOORE, HAYS and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 Harold O. Church died in the Connecticut State Jail, Hartford, on March 16, 1967, after some three weeks of incarceration there. His administrator brought an action against four prison officials under a federal civil rights statute, 42 U.S.C. 1983, seeking damages and costs of $150,000 for their alleged failure to furnish needed medical care in deprivation of Church's constitutional rights. The district court dismissed the action for failure to state a claim upon which relief could be granted, and it also denied a motion to reopen the judgment and file an amended complaint. We affirm.
 
 
 2
 In the original complaint, the plaintiff-appellant alleged that the four defendant employees of the State of Connecticut, including Harold E. Hegstrom, state jail administrator; Charles Baikal, supervising captain at the Hartford jail; M. Martin Gould, Hartford State Jail physician; and Patrick J. Hogan, Hartford jail correctional director, 'knew or should have known that Harold O. Church urgently needed medical attention and essential medical care' from March 6, 1967, until his death. At argument before the district court, the plaintiff disclosed that the allegation was based upon the specific facts that his decedent was observed by a jail attendant to 'look poorly' on March 6, and that he died ten days later of what an autopsy showed to be pulmonary emphysema and intensive bronchopneumonia. There was no specific allegation that any of these defendants knew that treatment was required for the preservation of Church's life, that Church ever requested such treatment, or even that any defendant was aware of his condition.
 
 
 3
 After the complaint was dismissed, the appellant moved to reopen the judgment and file an amended complaint including the following:
 
 
 4
 '10. The defendants having actual or constructive knowledge of Church's need for essential medical care and urgently needed medical attention constituted intentional conduct on their part resulting in Church's death and/or Church's death was the natural consequences of the defendants' failure to provide said essential medical care and urgently needed medical attention.
 
 
 5
 The court below denied the motion, noting that the allegation of 'intentional conduct' simply piled another inference atop the unsupported conclusion in the initial complaint that the defendants knew Church needed medical attention; and it found this set of compound inferences still insufficient to state a cause of action under 1983.
 
 
 6
 Because the district court considered the complaint on a motion to dismiss, it can be termed insufficient only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This complaint, even as amended, would allege only that the defendants knew of Church's illness and intentionally stood by, doing nothing. Such an allegation fails to set forth any facts sufficient to bring it within the patterns of conduct for which relief may be provided under 1983.
 
 
 7
 While the protection provided by the United States Constitution for state prisoners' rights to medical care does not hinge alone on the specific intent or willfulness with which a party acting under color of law may deny them, see Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), 1983 likewise does not authorize federal courts to interfere in the ordinary medical practices or other matters of internal discipline of state prisons. Wright v. McMann, 387 F.2d 519, 528 (2 Cir. 1967) (Lumbard, Ch. J., concurring); United States ex rel. Lawrence v. Ragen, 323 F.2d 410 (7 Cir. 1963). Whether a complaint claiming failure to provide medical care is deemed to allege a denial of Fourteenth Amendment rights, McCollum v. Mayfield, 130 F.Supp. 112, 115 (N.D.Cal.1955); cf. Hirons v. Patuxent Institution, 351 F.2d 613, 614 (4 Cir. 1965), or cruel and unusual punishment violating the Eighth Amendment, Wright v. McMann, supra; Coppinger v. Townsend, 398 F.2d 392, 393 (10 Cir. 1968), it must suggest the possibility of some 'conduct that shocks the conscience,' Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396 (1952), or 'barbarous act,' Robinson v. California, 370 U.S. 660, 676, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (Douglas, J., concurring); Beard v. Lee, 396 F.2d 749 (5 Cir. 1968). Mere negligence in giving or failing to supply medical treatment alone will not suffice, since all rights existing under state law are not also federal rights carrying a federal remedy. Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2 Cir. 1968).[1]
 
 
 8
 Cases which have held a denial of medical treatment actionable under 1983 in the absence of a showing of intent to cause harm to a prisoner generally have relied upon the presence of severe and abvious injuries. Hughes v. Noble, 295 F.2d 495 (5 Cir. 1961) (plaintiff jailed immediately after neck injury in automobile accident); Coleman v. Johnston, 247 F.2d 273 (7 Cir. 1957) (bullet wound in leg during arrest). No such injury was alleged in this case; nor did either version of the complaint assert other exceptional circumstances which might contribute to the statement of a cause of action, such as doubts about the legitimacy of the confinement itself, cf. Hughes v. Noble, supra; Coleman v. Johnston, supra; or refusal of medical aid which a prisoner requested.
 
 
 9
 In the absence of such factors, both versions of the appellant's complaint sounded in negligence, suggesting at most a possible breach of a duty of care through culpable omission. But the alleged non-action of a prison doctor who was not claimed to have any role in supervising prisoners outside the jail infirmary and whose attention presumably was never called to Church's illness, for example, while it might conceivably be negligence, could in no way rise to the level of a 1983 violation of constitutionally protected rights. Even in regard to the three defendants who might have had some direct responsibility for prisoner supervision, nothing was alleged to show specific, exceptional circumstances outside the normal processes of prison administration, cf. Stiltner v. Rhay, 371 F.2d 420 (9 Cir.), cert. denied386 U.S. 997, 87 S.Ct. 1318, 18 L.Ed.2d 346 (1967). To evaluate a 1983 claim, 'attention should be directed to the nature of the overt acts alleged,' Hoffman v. Halden, 268 F.2d 280, 295 (9 Cir. 1959); and in this regard, appellant's complaints of an intentional failure to provide care were properly found wanting.
 
 
 10
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Indeed, Connecticut provides a method for obtaining exactly the remedy appellant seeks, monetary damages, in cases of official negligence. No reason is suggested why the state claims procedure, Ch. 53 4-141-4-165, C.G.S. (Rev.1958, revised to 1966), is not perfectly available in practice as in theory. Cf. Wright v. McMann, 387 F.2d 519, 521-524 (2 Cir. 1967)