429 F.2d 864
 UNITED STATES ex rel. Robert R. HYDE, Appellant,
v.
Paul D. McGINNIS, Commissioner of Correction of the State of
New York, and Daniel McMann, Warden, and Edwin M.
Jameson, Associate Physician of Clinton
Prison, Dannemora, New York, Appellees.
 No. 833, Docket 31265.
 United States Court of Appeals, Second Circuit.
 Argued June 3, 1970.
Decided June 19, 1970.
 
 Betty D. Friedlander, Waverly, N.Y., for appellant.
 John G. Proudfit, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Albany, N.Y., on the brief), for appellees.
 Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Robert R. Hyde, formerly a prisoner at Clinton State Prison, seeks damages under the Civil Rights Act, 42 U.S.C. 1983, for allegedly inadequate medical treatment furnished by the State through its employees at the prison. Specifically Hyde seeks $75,000 from defendant McGinnis, Commissioner of Corrections of the State of New York, $65,000 from defendant Jameson, a doctor at Clinton Prison, and $15,000 from defendant McMann, Warden of the prison. The district judge, holding that Hyde's suit was only 'an ordinary negligence action masquerading under the Civil Rights Acts,' dismissed the complaint.
 
 
 2
 Since the complaint was dismissed, we must accept its allegations as true. See Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Particularly when an action is brought under the Civil Rights Act, we are chary of permitting dismissal where plaintiffs might obtain relief on facts suggested, but inarticulately stated, by the complaint. See, e.g., Escalera et al. v. New York City Housing Authority et al., 425 F.2d 853 (2d Cir. 1970); Holmes v. New York City Housing Authority, 389 F.2d 262, 265 (2d Cir. 1968).[1] Nonetheless, we are still required to examine the specific averments of the complaint, and the supporting allegations, in order to reach a fair characterization of plaintiff's claim. Merely designating the claim as falling in a specific category will not save if it in fact the allegations do not satisfy the label applied. See United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 87 (3d Cir. 1969); Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959).
 
 
 3
 That is particularly important in a claim such as this, for although this court has held that insufficient or improper medical treatment may, in aggravated cases, state a claim under 42 U.S.C. 1983, see Wright v. McMann, 387 F.2d 519 (2d Cir. 1967), Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969), we have also recognized that the conduct should be so harmful that it can properly be characterized as a 'barbarous act' that 'shocks the conscience.' Church v. Hegstrom, 416 F.2d 449, 451 (2d Cir. 1969).[2] More to the point, we have said 'Mere negligence in giving or failing to supply medical treatment alone will not suffice' to support an action under 1983. Id. at 451.
 
 
 4
 Viewed in its most favorable light, Hyde's complaint alleges that he suffered from disabling and painful muscle spasms, centered at the base of his spine, which caused him discomfort so severe that he was unable to sleep, and was barely able to walk. After the disease worsened during his incarceration at Clinton in 1964, Hyde was transferred to Sing Sing, where medical facilities were better designed to care for him. While there, he was treated with a number of tranquilizing drugs. Eventually he was given 'Miltown' pills which, Hyde says, in doses of 400 milligrams gave him '60 to 70 per cent' relief. In October, 1965, Hyde was sent back to Clinton with a recommendation that the treatment be continued, and that he be given physiotherapy.
 
 
 5
 The complaint goes on to state that once back at Clinton, however, Dr. Jameson refused to treat Hyde with the specific brand name drug 'Miltown' which had been administered at Sing Sing, or to provide physiotherapy. Instead, Hyde says, the doctor gave him a liquid form of the drug 'meprobamate,' the generic designation for the brand name 'Miltown,' because the prison policy was to prefer liquid tranquilizers to pills whenever possible. Hyde protested, he alleges, that the liquid gave him no relief, and that it was totally ineffective in suppressing his symptoms. And, as a result of his pain and spasms, he was unable to remain still during fittings for glasses, causing his eyesight to deteriorate. Furthermore, he experienced such severe spasms that in addition to undergoing continual pain and discomfort, he suffered an inguinal hernia.
 
 
 6
 Hyde asserts over and over again that he sought medication in the pill form, but that Dr. Jameson, insisting that the drug he administered was 'exactly the same as Miltown,' refused to change his prescription. As a result, Hyde charges that Dr. Jameson was 'negligent in his duty to safeguard plaintiff's health and physical well-being.' Defendants McMann and McGinnis, by enforcing prison restrictions on communications, and by refusing to replace Dr. Jameson, are alleged to have aided in, and been partly responsible for, Hyde's anguish and injuries.[3]
 
 
 7
 Although Hyde at the outset of his complaint recites the formalistic incantation that all the defendants 'wilfully, deliberately, and maliciously' deprived him of his right to adequate medical care, the specific allegations on which these conclusory statements are based negate any claim other than that of 'professional malpractice' or 'negligence,' as the conduct is described throughout the remainder of the complaint. The entire basis for Hyde's claim, in the context of the allegations of his complaint, rests solely on a disagreement with Dr. Jameson's professional judgment over the relative efficacy and equivalence of different forms-- pills or liquid-- of a specific tranquilizer. Hyde's ailments, which must be accepted as he describes them, were painful and unpleasant, and their effects may endure. But not all acts or omissions of prison officials-- even those resulting in more serious consequences-- give rise to an action under the Civil Rights Act. In Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969), where we also sustained the dismissal of a complaint, plaintiff's decedent allegedly died as a result of failure of prison authorities to provide him with proper medical care. The complaint asserted that the prison authorities knew or should have known of Church's need for medical care, did nothing to assist him, and in effect caused his death through culpable omission. Looking to the 'specific facts' relied upon to support the allegations, we noted that while the conduct 'might conceivably be negligence,' it did not 'rise to the level of a 1983 violation of constitutionally protected rights.' 416 F.2d at 451. Virtually every other instance in which a court has granted relief has been characterized by a wilful refusal to treat a known ailment, resulting in considerable pain and injury, and not the mere exercise of faulty judgment. For example, in Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957), the plaintiff, suffering from several bullet wounds in one of his legs, was arrested and held without any charge for three days. During that period, despite the wounds, and a festering infection (of which defendants were aware), the plaintiff received no medical assistance in response to his requests. This conduct resulted in dire consequences-- the leg was amputated. Moreover, the charges that were eventually lodged against him were dismissed shortly thereafter.[4]
 
 
 8
 Hyde's claim, however, is not that he has been completely denied needed medical care by a wilful refusal of the prison authorities to assist him. Instead, he seeks compensation for what he paints as faulty judgment on the part of the prison doctor in choosing to administer one form of the same medication instead of another. As one court stated the distinction:
 
 
 9
 'The prisoner's right is to medical care-- not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under 1983.' Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968).
 
 
 10
 See also Stiltner v. Rhay, 371 F.2d 420 (9th Cir.), cert. denied, 386 U.S. 997, 1025, 87 S.Ct. 1318, 18 L.Ed.2d 346, 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967); Mayfield v. Craven, 299 F.Supp. 1111 (E.D.Cal.1969) (while unjustifiable refusal to treat a prisoner may be actionable, prisoner may not 'second-guess' physician through 1983 action).
 
 
 11
 Finding, then, that the complaint describes only a disagreement over the judgment exercised in Hyde's medical treatment, at most rising to no more than mere negligence on Dr. Jameson's part, we hold that it did not state a claim against Dr. Jameson under 1983. Hyde's claim against defendants McGinnis and McMann is essentially that they refused to overrule Dr. Jameson's allegedly 'unconstitutional denial' of medical treatment; since we find the premise faulty, the conclusion must fall as well.
 
 Dismissal of the complaint is affirmed.[5]
 
 12
 J. JOSEPH SMITH, Circuit Judge (concurring and dissenting).
 
 
 13
 I concur in the dismissal as to Warden McMann and Commissioner McGinnis, dissent as to the dismissal as to Doctor Jameson. It appears that plaintiff has painted a sufficiently lurid picture of dire suffering and stubborn refusal by the doctor to use the proven method of relief to state a claim of 'barbarous acts' that 'shock the conscience.' Whether he can establish any such facts is of course another matter. We may well suspect he can't, but he should be entitled to an opportunity.
 
 
 
 [1]
 There is authority in other Circuits for the proposition that dismissal of an in forma pauperis complaint for frivolousness under 28 U.S.C. 1915(d) will be reviewed only for an abuse of discretion. See Ivey v. Frost, 346 F.2d 115, 116 (8th Cir. 1965); Cole v. Smith, 344 F.2d 721, 723 (8th Cir. 1965); Weller v. Dickson, 314 F.2d 598 (9th Cir. 1963); Caviness v. Somers, 235 F.2d 455, 456 (4th Cir. 1956). See also 6 J. A. Moore, Federal Practice, P54.74 n. 53, at 1338 (1953). Cf. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457 (1915). The State, however, does not urge that we apply that standard on this appeal. In view of this and possible constitutional objections, cf. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), we do not reach the question, but apply the ordinary standards on appeal from a dismissal of a complaint
 
 
 [2]
 Other circuits have held that rendering inadequate or improper medical treatment to a prisoner gives rise to no cause of action whatsoever under 1983. See Pennsylvania ex rel. Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966) ('improper medical treatment * * * not cognizable' under 1983), cert. denied, 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797 (1967); Cole v. Smith, 344 F.2d 721 (8th Cir. 1965) (refusal of medical treatment to prisoner insufficient for Civil Rights claim)
 
 
 [3]
 During his stay at Clinton, Hyde attempted several avenues of relief. In November 1965, he sought habeas corpus on the ground of inadequate medical treatment. That claim was denied by the Clinton County Supreme Court, and an Article 78 (New York Civil Practice Law and Rules Art. 78) proceeding was also denied in January, 1966 for failure to exhaust administrative remedies. A later Article 78 proceeding in April 6, 1966 also granted no legal relief, but resulted in a suggestion that 'in justice to Dr. Jameson,' the Warden might voluntarily relieve him of his responsibilities towards Hyde. Shortly thereafter Hyde was transferred to Attica State Prison, where administration of Miltown ended his complaints. He was paroled from Attica on December 1, 1967, and his sentence will expire on February 8, 1971
 
 
 [4]
 See Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966) (refusal to treat heart ailment combined with denial of legal materials); Hirons v. Director, 351 F.2d 613 (4th Cir. 1965) (refusal to give operation recommended by prison doctor, leading to irreparable injury); United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir. 1964) (denial of medical care may be actionable when 'an exceptional circumstance'), cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277 (1965); Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961) (accident victim with broken neck held without probable cause and denied access to medical treatment); McCollum v. Mayfield, 130 F.Supp. 112 (N.D.Cal.1955) (complete denial of medical treatment resulting in paralysis and disablement)
 
 
 [5]
 Plaintiff is not left without any remedy, should he wish to pursue his claim for negligence. If he can prove such a contention, the State courts have shown themselves hospitable to those subjected to medical malpractice in state institutions. See Piscano v. State, 8 A.D.2d 335, 188 N.Y.S.2d 35 (4th Dept. 1959) (negligence in failing to administer drug to prisoner in order to relieve pain held actionable); Rosario v. State, 51 Misc.2d 790, 274 N.Y.S.2d 81 (Ct.Cl.1966) (negligent diagnosis resulting in continued involuntary commitment in state mental hospital actionable). We recognize, of course, that the mere presence of a state remedy does not oust federal jurisdiction under the Civil Rights Act. See Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1967)