Nathaniel WILLIAMS,
Plaintiff-Appellant,

v.

Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, et al., Defendants-Appellees.

No. 129, Docket 73–2781.

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1974.

Decided Dec. 30, 1974.

Jeffrey Ira Zuckerman, New York City, for plaintiff-appellant.

Margery Evans Reifler, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for defendants-appellees.

Before LUMBARD, WATERMAN and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge:

Nathaniel Williams appeals the dismissal of his pro se, handwritten complaint seeking damages of $100,001.00 from various state prison personnel under the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985(3), for injuries sustained while imprisoned by the State of New York at the Green Haven Correctional Facility, Stormville, New York, in 1969.[1] The complaint, against Leon J. Vincent, superintendent of the Green Haven facility, Lieutenant Swissler, a prison guard, and unnamed prison hospi-

---

1. Although appellant Williams proceeded pro se at the district court level, counsel was subsequently appointed for the purposes of this appeal.

tal officials,[2] was dismissed on October 29, 1973, upon defendants' motion, before the filing of any answers to the complaint, by Judge Carter in a brief endorsement opinion,[3] on the ground that appellant had failed to state a cause of action. We reverse that decision in part and remand for further proceedings.

Williams' complaint arises out of an assault committed upon him by a fellow inmate, Claude Searcy, on September 4, 1969, during which that inmate cut off a large portion of Williams' right ear with a broken jar. Williams alleges that Lieutenant Swissler was standing next to him as a group of prisoners prepared to march to lunch from their work, and that Swissler saw the attacker approach Williams from behind with a broken jar. Rather than protecting Williams, Swissler allegedly jumped back and out of the way.

Upon being taken to the prison hospital, Williams asked the hospital personnel to try to suture the severed portion of his ear back on. Instead, he alleges, they told him that he did not need his ear, threw it away, and sewed up the stump with ten stitches. Williams has subsequently undergone plastic surgery on that ear six times in the prison hospital at the Clinton Correctional Facility, Dannemora, New York.[4]

Williams apparently began immediately to protest the medical care he was being given, as well as the failure of the guard to protect him. He alleges that in response to these protests the prison officials threatened to kill him if he brought suit against the State. Immediately following the stitching of his ear, he was placed in solitary confinement for twenty-two days, during which time he received no medication. He alleges that he was placed in solitary without a "fair hearing," and that he had not broken any prison rule nor retaliated when attacked by Searcy, whom he claims he did not even know.

In considering whether Williams' complaint states a cause of action under section 1983 for violation of his constitutional rights, the allegations must be accepted as true, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), and the complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, pro se complaints such as this must be liberally construed. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).[5]

Williams maintains on appeal that the complaint alleges sufficient callousness and deliberate neglect on the part of prison officials to his medical needs and to his requests for treatment that it states a claim under section 1983 for violation of his eighth and fourteenth amendment rights.[6] A complaint under section 1983 based on inadequate medical

2. The record indicates that the complaint was served on "prison hospital officials" on April 23, 1973. In the absence of an answer by these various officials, we will assume for the purpose of deciding this appeal that, as seems to be alleged, they were personally involved in the treatment of appellant on September 4, 1969.

3. "Motion granted and the complaint is dismissed. See Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied sub nom. Oswald v. Sostre, 404 U.S. 1049, 92 S.Ct. 1190, 30 L.Ed.2d 740 (1972)."

4. Williams was transferred to the Clinton prison on June 25, 1970, and continues to be incarcerated there.

5. Williams was not required to exhaust state remedies before bringing this section 1983 damage action in federal court. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

6. For an analysis of the relative applicability of the eighth and fourteenth amendments to injuries suffered by state prisoners as a result of alleged misconduct by prison guards or officials, see Johnson v. Glick, 481 F.2d 1028 (2 Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973).

treatment states a cause of action if it alleges conduct which "shocks the conscience," such as deliberate indifference by prison authorities to a prisoner's request for essential medical treatment. Bishop v. Stoneman, 508 F.2d 1224 (2d Cir. 1974); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1971); *cf.* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 562 (1972).

In response to Williams' claim, the State, on behalf of the defendants, makes the following arguments which were apparently accepted by the district court below. First, it argues that the claim relating to the doctor's decision merely to sew up the wound with ten stitches is based on nothing more than a difference of opinion over a matter of medical judgment, and as such fails to state a deprivation of constitutional magnitude. United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970); see Corby v. Conboy, 457 F.2d at 254.

Second, with respect to the alleged denial of medication while Williams was confined for 22 days in solitary, the State argues that there is no express allegation in the complaint that medical care was requested by Williams from solitary, and that the complaint is therefore insufficient as it does not allege that prison officials willfully refused to treat a known ailment.[7] We disagree, and find that the complaint states a cause of action under section 1983.

■ With respect to the refusal of prison doctors to provide the medical care Williams requested when he was first brought to the prison hospital, the allegations support the claim that it was deliberate indifference towards Williams' medical needs, rather than an exercise of professional judgment, which led prison medical officials merely to stitch the stump of his ear. Such a claim is supported by the allegation that Williams was told simply that "he did not need his ear" by doctors who then threw the severed portion away in front of him, and also by the fact that if it was possible that Williams' ear could have been saved by sewing it back on immediately at the hospital, one would expect a concerned doctor to have tried. Of course, it may turn out that the treatment Williams requested was impossible under the circumstances, or that there were other medical considerations which led the doctors, rightly or wrongly, merely to close the wound with ten stitches. But on the basis of the allegations in the complaint, and assuming that evidence might show that sewing the severed portion of the ear back on was practicable, the possibility that deliberate indifference caused an easier and less efficacious treatment to be consciously chosen by the doctors cannot be completely foreclosed. The complaint here alleges more than what we found insufficient in United States ex rel Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970), relied upon by the district court below, where this court stated that the complaint rested solely on a disagreement with a doctor's professional judgment over the relative efficacy or equivalence of different forms—pills or liquid—of a specific tranquilizer. Id. at 867.

■ With respect to the denial of medication while Williams was in solitary following the stitching of his wound, a liberal reading of this pro se complaint, as well as the supporting affidavit, suggests that Williams may be able to show that he needed and requested medication while in solitary following the injury, but that such requests were callously refused or ignored. Allegations

---

7. The State makes the further argument that the complaint alleges nothing more than mere negligence, because Williams, after stating the facts in his pro se complaint, drew the legal conclusion that such conduct constituted negligence on the part of the State. Allegations of "mere negligence" have been held insufficient to state a claim under the eighth or fourteenth amendments. E. g., United States ex rel Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). We decline to construe that legal conclusion, drawn without the assistance of counsel, to limit the scope of the complaint, when facts actually alleged suggest conduct more culpable than negligence on the part of prison officials.

of such willful refusals of requests for medical treatment by prison officials, especially in the circumstances described in the complaint, state a cause of action under section 1983. See Bishop v. Stoneman, 508 F.2d 1224 (2d Cir. 1974); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).[8]

Williams also maintains that the complaint states a second cause of action, namely that he was committed to solitary by Superintendent Vincent without being afforded a "fair hearing." He alleges that the attack upon him was unprovoked, that he did not know his assailant, and that he did not retaliate. The district court dismissed the charge on the authority of Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). In Sostre, this court held that a state prisoner, facing serious disciplinary action such as lengthy confinement in solitary or the loss of good time credits, was in most cases entitled to be confronted with the accusation, informed of the evidence against him, and afforded a reasonable opportunity to explain his action, but that he was not

constitutionally entitled to more expansive notice and hearing requirements. Id., 442 F.2d at 198–199. Although the Supreme Court has recently gone beyond Sostre in setting forth minimum due process safeguards henceforth to be required in prison disciplinary proceedings, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), this court's decision in Sostre controls in the present case, because the Supreme Court held that Wolff was not to be retroactively applied to prior disciplinary proceedings, id. at 573–575, 94 S.Ct. 2963, 41 L.Ed.2d 935.

The record below contains only the bare allegations by Williams set forth above. It seems to us possible that Williams' allegation that he was denied a "fair hearing" was intended to refer to a situation where prison officials had not met even the minimal due process standards described in Sostre.[9] Therefore we believe that Williams should be allowed the opportunity to amend his complaint to make more specific the allegations contained therein.[10]

Williams also maintains that the complaint states a cause of action against Lieutenant Swissler and Superintendent

---

**8.** Cf. Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); La Reau v. McDougall, 473 F.2d 974 (2d Cir. 1972), cert. denied, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973). These cases involved solitary confinement coupled with additional physical hardships (not including the denial of medical attention) which courts found to be below minimum standards of human decency and thus in violation of the eighth amendment.

**9.** It is not made clear why Williams was put in solitary, or whether he was even informed of the reason for it. The State, in its brief, suggests that it may have been for protective rather than punitive purposes. However the complaint seems to allege that it was punitive, if not malicious, and the alleged failure of prison officials to provide Williams with medication while in solitary would seem to be more consistent with punitive rather than protective confinement.

Of course, evidence that Williams was committed to solitary confinement to dissuade him from bringing a suit against the State would clearly state a claim under section 1983. See Corby v. Conboy, 457 F.2d

251 (2d Cir. 1972); Sostre v. McGinnis, 442 F.2d at 188–189.

**10.** The State argues that even if Williams can allege a violation of the due process requirements set forth in Sostre, those standards should not be applied retroactively, citing Wolff v. McDonnell, supra. See also Morrissey v. Brewer, 408 U.S. 471, 490, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This issue should be considered in the first instance by the district court, if necessary, on remand.

We note, however, that in Wolff the Supreme Court stated that although the new due process requirements established in that case related to the integrity of the fact-finding process, it did not think that error had been so pervasive under the old procedures (such as those required under Sostre) to warrant the costs which would result from invalidating prior disciplinary determinations where the safeguards now required under Wolff had not been applied. In contrast, where the very minimal safeguards required by Sostre have not been met, the possibility of error is substantially greater and the interests in going back are that much stronger.

546

Vincent arising out of the failure of Swissler to protect him from Searcy's attack. The complaint alleges that Swissler, while standing next to Williams, looked back, saw Searcy approach Williams from behind with a broken jar, had an opportunity to protect him, but instead jumped back and out of the way. Vincent, as the prison superintendent, is charged in the complaint with being responsible for Swissler's failure to protect Williams.

█ We have already noted that mere negligence by a state prison doctor may give rise to a malpractice claim in state courts but not to a violation of federal constitutional rights. See Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). In the same way, an isolated omission to act by a state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him.[11]

Here it is doubtful that Swissler's conduct amounted to more than a split-second decision to jump back when he suddenly perceived danger to both Williams and himself. Indeed, other than the mere claim that Swissler had an opportunity to protect Williams, the complaint is devoid of factual allegations of aggravating circumstances to support a claim of deliberate indifference on the part of Swissler which might rise to the level of a constitutional violation. There is no allegation of a history of similar incidents, or that Swissler, having jumped back initially, stood by and let the attacker further injure Williams. Indeed, Williams himself refers to Swissler's conduct as "careless" and "negligent." Nevertheless we conclude that Williams should be given a further opportunity to come forward with more specific allegations to support a claim arising out of Swissler's conduct.

█ With respect to the claim against Vincent based on Swissler's alleged failure to protect Williams, the complaint provides absolutely no basis for imposing liability upon Vincent. Such liability must be based on a showing of some personal responsibility for the conduct of Swissler; respondeat superior does not apply in these actions. See Johnson v. Glick, 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967). The complaint does no more than allege that Vincent was in charge of the prison. It does not allege that he authorized Swissler's conduct or that there had even been a history of similar incidents. Accordingly, we affirm the dismissal as to Vincent on this issue, without prejudice to an application for leave to amend if a factual basis for Vincent's alleged responsibility should appear. See Johnson v. Glick, 481 F.2d at 1034.

The order dismissing the complaint is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

11. In this circuit, the closest case on point, besides those involving inadequate medical treatment cited earlier, is Johnson v. Glick, 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973), involving the use of force by a state guard on a person detained by the State during his trial.

In order to find a deprivation of a state prisoner's constitutional rights under the fourteenth and eighth amendments, other circuits, in circumstances similar to those in the present case, have required a degree of culpability involving at least callous indifference to the predictable consequences of one's behavior upon the prisoners under one's control. See, e. g., Williams v. Field, 416 F.2d 483 (9th Cir. 1969), cert. denied, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970); Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970); Roberts v. Williams, 456 F.2d 819 (5th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971), addendum, 456 F.2d at 834–835 (5th Cir. 1972); United States ex rel Miller v. Twomey, 479 F.2d 701 (7th Cir.), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).