Otis CLAY, Plaintiff-Appellant,

v.

Doctor William R. MARTIN et al.

and

The United States Surgeon General et al.

and

The United States Defendants-Appellees.

No. 149, Docket 74–1507.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1974.

Decided Jan. 20, 1975.

---

Carl O. Callender, New York City (Community Law Offices, Arthur Helton, law student, on the brief), for plaintiff-appellant.

William S. Brandt, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Gerald A. Rosenberg, Asst. U. S. Atty., on the brief), for defendants-appellees.

Before FEINBERG and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*

FEINBERG, Circuit Judge:

This seemingly simple case raises at its core grave issues about medical experiments performed on prisoners. In 1971, Otis Clay brought a pro se action in the United States District Court for the Southern District of New York against three doctors employed by the Public Health Service,[1] three high United States Government officials[2] and the United States Government, claiming "inhumane treatment" while Clay was a federal prisoner and demanding $2,000,-000 damages. The pro se complaint, read liberally, alleges the following: In 1970, Clay participated in a program of drug experimentation conducted by defendants at the Addiction Research Center, a laboratory of the National Institute of Mental Health in Lexington, Kentucky; plaintiff was injected with Naltrexone, a drug thought to prevent narcotics from exerting euphoric and dependency effects; this drug was known by the supervising doctor to be dangerous; plaintiff consented because the doctor assured him that the dosage involved would be too small to cause harm; as a result plaintiff suffered a serious heart attack. In August 1971, the United States Attorney for the Southern District of New York answered Clay's complaint on behalf of all defendants.

Some two years later, plaintiff obtained his present lawyer and served interrogatories upon defendants. In the ensuing months these were answered or objected to, but in November 1973, after plaintiff's attorney missed a pre-trial conference, the district court dismissed the action for lack of prosecution. When plaintiff's attorney claimed that he had not been notified of the conference, the court granted his motion to restore the case to the civil docket but imposed two conditions. These were that plaintiff's counsel file by specified times a notice of appearance and "an amended complaint containing a short, concise statement of plaintiff's claim." Although the first amended complaint was filed a few days beyond the time called for, these two conditions were met by January 1974. All named defendants again answered, and pleaded ten affirmative defenses.

Apparently prompted by some of the affirmative defenses in the Government's answer, plaintiff moved in February 1974 for permission to file a second amended complaint.[3] Defendants re-

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. These were Dr. William R. Martin, Dr. Peter A. Mansky and Dr. Donald R. Jasinski.

2. These were the Surgeon General, the Attorney General and the Director of the Bureau of Prisons.

3. The Government has tried to characterize this as a third amended complaint; in reality it was only the second amended complaint. What the Government would call the first amended complaint was a document titled "Complaint," which the clerk of the court would not accept until it was retitled "Amended Complaint." The Government la-

fused to agree to further amendment of the complaint. In addition, although an answer had already been filed, defendants moved for dismissal of the first amended complaint on the ground that the court's order restoring the case to the docket had not been obeyed. In March 1974, Judge Sylvester J. Ryan granted defendants' motion to dismiss and denied plaintiff's motion for leave to amend. The basis of the order of dismissal was that:

> All of plaintiff's complaints are defective as to venue, subject matter, jurisdiction and improper parties as defendants.[4]

Plaintiff appeals from these rulings.

■■■ Plaintiff's original pro se complaint was, of course, inartistically drafted but alleged enough, if true, to cause serious concern. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. Dec. 30, 1974). In considering both the pro se complaint and the first amended complaint, the question must be whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Williams v. Vincent, *supra*. Both complaints alleged a callous disregard for the safety of human subjects in medical experimentation, a problem which has drawn increasing public and governmental attention.[5] For example, the National Research Act, signed into law in July 1974, created a National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research.[6]

---

bels these two documents the first and second amended complaint. We consider them as one and call it the first amended complaint.

4. The reference to "All of plaintiff's complaints" apparently meant the pro se complaint, the "Complaint" and the "Amended Complaint." As explained in note 3 supra, the last two were one (the first amended complaint). The Government's overly technical insistence upon calling the "Complaint" and the "Amended Complaint" the first and second amended complaints, when in reality they were virtually identical, may have led the district judge to believe that there had been an extra amended complaint filed. In truth there had been only one complaint filed by an attorney, and one other awaiting leave to be filed, which was denied.

5. Comment, Medical and Psychological Experimentation on California Prisoners, 7 Univ. of Cal.Davis L.Rev. 351 (1974); Capron, Medical Research in Prisons, 3 Hastings Center Report 4 (June 1973); Bowers, Prisoners' Rights in Prison Medical Experimentation Programs, 6 Clearing. Rev. 319 (1972); Ratnoff & Smith, Human Laboratory Animals: Martyrs for Medicine, 36 Ford.L.Rev. 673 (1968); Fletcher, Human Experimentation: Ethics in the Consent Situation, 32 Law & Contemp.Prob. 620 (1967); Freund, Is the Law Ready for Human Experimentation?, 2 Trial 46 (Oct./Nov. 1966).

A recent case that contained allegations and issues somewhat similar to this one is Mackey v. Procunier, 477 F.2d 877 (9th Cir. 1973). See also Hyman v. Jewish Chronic Disease Hosp., 42 Misc.2d 427, 248 N.Y.S.2d 245 (Sup.

Ct.), rev'd, 21 A.D.2d 495, 251 N.Y.S.2d 818 (2d Dep't 1964), rev'd, 15 N.Y.2d 317, 258 N.Y.S.2d 397, 206 N.E.2d 338 (1965). The doctors involved in the *Hyman* case, who had injected live cancer cells into patients without their consent, were later disciplined by the New York Board of Regents. Ratnoff & Smith, supra, at 687.

6. Section 202(a)(1)(A) of the Act (Pub.L.No. 93–348; 88 Stat. 342) instructs the Commission to:

> (i) conduct a comprehensive investigation and study to identify the basic ethical principles which should underlie the conduct of biomedical and behavioral research involving human subjects, (ii) develop guidelines which should be followed in such research to assure that it is conducted in accordance with such principles, and (iii) make recommendations to the Secretary [of Health, Education, and Welfare] (I) for such administrative action as may be appropriate to apply such guidelines to biomedical and behavioral research conducted or supported under programs administered by the Secretary, and (II) concerning any other matter pertaining to the protection of human subjects of biomedical and behavioral research.

U.S.Code Cong. & Admin.News, 93d Cong., 2d Sess., Pamph. No. 7, p. 1781. Section 202(a)(2) of the Act directs the Commission to "identify the requirements for informed consent to participation" in medical research experiments by "children, prisoners and . . . institutionalized mentally infirm." Id. at 1782.

The Commission has been given two years to complete its duties. Section 211 of the Act

The legislative history of the Act indicates that it was passed in reaction to reports of abuses similar to those alleged here. There was testimony about "experimental surgery, prison research, university-centered research abuses, the Tuskegee Syphilis Study, genetic manipulation," and so forth. U.S.Code Cong. & Admin.News, supra, note 6, at 2168 (Sen.Rep.No.93–381). Of particular concern to the drafters was that a subject's consent be based on full disclosure, free of any form of coercion. Id. at 2175. In view of these expressions of public policy, a court should not be quick to dismiss on pleading technicalities an action involving experimentation on humans.

■ Keeping these considerations in mind, we turn to the record before us. The stated reason for dismissing the first amended complaint was that it was "defective as to venue, subject matter, jurisdiction and improper parties." Dismissal for improper venue was wrong. The proposed second amended complaint was already before the court, and it showed that plaintiff resided in New York City. Even if this document could be ignored—and we believe that doing so would be hypertechnical—proper venue need not appear on the face of the complaint. 2A J. Moore, Federal Practice ¶¶ 8.06 [4] at 1631, 8.08 at 1645 (2d ed. 1948). The judge's reference to "subject matter, jurisdiction" is unclear. If "jurisdiction" referred to personal jurisdiction over the defendants, dismissal was not justified. At that stage of the proceeding, it should have been assumed that jurisdiction over the individual doctors had been properly obtained, particularly since answers on behalf of all the doctors had been filed as long ago as August 1971. It is possible, as plaintiff points out,[7] that the comma in the phrase "subject matter, jurisdiction" is a typographical error and that dismissal

was based on lack of subject matter jurisdiction. Assuming that to be so, the order was nevertheless improper. The first amended complaint does clearly allege at least an action based upon diversity jurisdiction against one or more of the individual doctors for negligence, malpractice and misrepresentation and alleges an action against the United States for negligence under the Federal Tort Claims Act. Finally, the presence of "improper parties" was also an invalid basis for dismissal of the complaint. Misjoinder, if any, does not justify such an extreme sanction. Fed.R.Civ.P. 21. Accordingly, we believe that dismissal of the first amended complaint was improper.

■ We turn now to the refusal to allow filing of the second amended complaint. It has long and properly been the rule in the federal courts that leave to amend should be freely given in the absence of any undue delay or prejudice to the opposing party. Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 3 J. Moore, Federal Practice ¶ 15.08 [4] at 895–96 (2d ed. 1948). The amendments contained in plaintiff's proposed second amended complaint were not unduly delayed and clearly would not cause defendants undue prejudice; indeed, defendants so admitted before the trial court. The amendments changed the allegations of state citizenship of the defendant doctors, furnished the names of the Attorney General, the Acting Surgeon General and the Director of the Bureau of Prisons, stated plaintiff's residence in New York City as the basis for venue, changed the place of the alleged wrong from a prison to the Addiction Research Center, further specified the details of the administration of the drug and stated that plaintiff had presented a claim in

provides, however, that at about the time the Commission is disbanded a National Advisory Council for the Protection of Subjects of Biomedical and Behavioral Research will be created. The Council will have responsibilities of an ongoing nature similar to those of the Commission. Id. at 1785. Thus, it appears that Congress has provided for a permanent watchdog over medical experiments conducted on human beings. See Culliton, National Research Training Act: Restores Training, Bans Fetal Research, 4 Hastings Center Report 12 (Sept. 1974).

7. Appellant's brief at 5.

writing to defendants which had been denied in writing. Only the last, which was based upon the requirements of 28 U.S.C. §§ 2401(b), 2675(a), was a truly new substantive allegation. The Government, in its brief on appeal, discusses several hypothetical possibilities in an attempt to prove that the complaint cannot possibly state a cause of action. At best, its argument shows that some defendants are not properly in the action. The second amended complaint, even more clearly than the first, alleges an action against the United States for negligence under the Federal Tort Claims Act, and an action against one or more of the individual doctors for negligence, malpractice and misrepresentation. Perhaps the claim of misrepresentation against the doctors alleges an intentional tort that could not form the basis of a suit against the United States under the Act, 28 U.S.C. § 2680(h), but it is more likely pleaded to vitiate the so-called consent defense relied upon by the defendants.[8] Even if misrepresentation is used to allege an intentional tort by the doctors, there is nothing improper in pleading inconsistent causes of action. Fed.R.Civ.P. 8(e).

We recognize that this case presents a number of knotty issues, some legal and some factual, e. g., whether there was a true "informed consent" by Clay to the experiment; whether 42 U.S.C. § 233(a)[9] protects these Public Health doctors against tort actions for injuries inflicted before its effective date, and whether, if so, the doctors were acting within the scope of their employment. But these are questions that should first be raised in the district court on an adequate record and at an appropriate time. Of course, we do not suggest that the allegations in plaintiff's complaints are necessarily true. We hold only that on the record before us he should be given the opportunity to proceed with his case.

Judgment reversed with directions to reinstate the complaint and allow the proposed amended complaint to be filed.

---

8. This "consent" is pleaded as the second affirmative defense in defendants' answer to the first amended complaint.

9. This section provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for

personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.