Mary L. WHITLEY, in her official capacity as the Administratrix of Joseph H. Jenkins, Deceased, Plaintiff,

v.

Joseph F. LEWIS, et al., Defendants.

Civ. A. No. 2:93cv268.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 20, 1994.

Oldric J. LaBell, Jr. and Philip L. Avis, Newport News, VA, for plaintiff.

David C. Bowen, Wilcox and Savage, Norfolk, VA, for defendants.

*MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

## I. INTRODUCTION

The plaintiff's decedent, Mary L. Whitley, filed this action pursuant to Title 42 U.S.C. § 1983 on behalf of her brother, Joseph Jenkins, who suffered a fatal brain seizure on April 1, 1991 at the St. Brides Correctional Center in Chesapeake, Virginia.[1] The defendants in this action, all of whom were St. Bride's medical personnel at the time of Jenkins' death, are: Dr. Jorge Ibarra; Nurse Katherine McWaters; Nurse Frances Clark; Nurse Esther Cochran; and Nurse Catherine Couther. The plaintiff's decedent asserts that the defendants acted with deliberate indifference to Jenkins' medical condition in violation of his constitutional rights. The defendants have filed a motion for summary judgment, asserting that there are no genuine issues of material fact in dispute and that this case should be dismissed as a matter of law.

## II. FACTS

The facts, construed in a light most favorable to the plaintiff, are as follows. Prior to his incarceration at St. Brides, Jenkins was seriously injured in a car accident and suffered permanent post-traumatic seizure disorder. This disorder, if untreated, causes brain seizures. At the time of his entry at St. Brides on March 16, 1988, Jenkins' psychological records showed that the he had a "Functional Rating of Mentally Deficient" a non-verbal IQ of 63, and that his "memory functioning for recent and remote events appeared moderately impaired."[2] *See* Plaintiff's Reply Brief at p. 3.

Jenkins remained at St. Brides from March 16, 1988 until the time of his death on April 1, 1991. While at St. Brides, he regularly sought medical assistance for a number of maladies, including an irritated prosthetic eye, nose bleeds, and a sinus infection.[3] Jenkins also received treatment for his seizure disorder from Dr. Ibarra, who prescribed Dilantin and Phenobarbital, medications necessary to prevent seizures. Ibarra Aff. at p. 3.

Pursuant to facility regulations, the majority of inmates, including Jenkins, were required to ingest their medication at the "pill window," which was administered by the defendant nurses, located adjacent to the dining area, and open during dining hours. While an alternative pill distribution system ("HS") enabled guards to deliver medication directly to the inmates while in their cells, Jenkins was not placed on this list.[4]

Dr. Ibarra warned Jenkins of the importance of taking his medication on at least four occasions over the years and, according to affidavits submitted by Dr. Ibarra and the defendant nurses, he appeared to understand the warnings and seemed capable of following the regimen. Ibarra Aff. at pp. 3–4; McWaters Aff. at pp. 3–4; Clark Aff. at p. 3; Couther Aff. at 4; Cochran Aff. at 3–4. In 1990, in an effort to make the medication process easier for Jenkins to follow, Dr. Ibarra reduced the frequency of the dosage (from twice daily to once daily) and allowed Jenkins to take the medication during an expanded daily time frame. Ibarra Progress Notes, 1/26/90.

Despite the warnings and accommodations by Dr. Ibarra, Jenkins had intervals where he missed taking his medication. The sign-in logs show that he took his medication 311 out of 365 days in 1989 (85%). In 1990, the records show that he took his medication on

---

1. The original suit was filed against numerous defendants and asserted a number of additional claims. *See* Memorandum Opinion of October 6, 1993 (dismissing several defendants and claims).

2. Following a forensic examination on February 10, 1990, a forensic pathologist found Jenkins competent to stand trial, capable of comprehending his legal situation and able to assist his attorney in the defense of his case. *See* Admissions of November 8, 1993, number 12 (deemed admitted due to plaintiff's failure to respond).

3. Jenkins received medical attention for his prosthetic eye on approximately forty-five occasions during his three years at St. Brides. *See* Defendants' Memorandum in Support of Summary Judgment, p. 5, n. 2.

4. The defendants assert that the HS procedure was rarely used and often limited to individuals receiving four doses of medication daily. Ibarra Dep. at 25.

338 days (92%). In 1991, Jenkins missed his medication on four days in January, three days in February, and approximately ten days in March.[5] *See* Sign-in Logs, January 1989–March 1991.

During the three years that Jenkins was under Dr. Ibarra's care, he underwent quarterly blood screens to monitor his medication levels. These screens consistently showed that his medication levels were below normal. Dr. Ibarra stated that despite these low levels, he considered Jenkins' condition to be stable. Ibarra Aff. at p. 3–5.

Prior to his death, Jenkins suffered three seizures while at St. Brides. He suffered documented seizures on August 30, 1989 and January 30, 1990 and suffered an undocumented "near seizure" on February 21, 1990.[6] On April 1, 1991, Jenkins suffered his final fatal seizure. An autopsy performed shortly thereafter revealed that his blood medication levels were "markedly subtherapeutic." *See* Autopsy, p. 3 (attached to Plaintiff's reply brief).

In opposition to the defendants' motion for summary judgment, the plaintiff submitted a number of affidavits from herself, Jenkins' other sister (Violet Rowsey) and Jenkins' mother (Violet Blankenship). These affidavits assert that Jenkins was so forgetful that he could not be expected to remember to take his daily medication. Whitley Aff. of 1/4/94, at para. 2; Rowsey Aff. of 1/4/94 at para. 2. In addition, Violet Rowsey recounted how she called St. Brides on a number of occasions following Jenkins' first seizure, advising a nurse and assistant warden of the importance of Jenkins' daily medication and receiving reassurance that he would receive his medicine. Rowsey Aff. of 9/3/93 at para. 2. Ms. Rowsey and Ms. Blankenship also reported that they had been told by Jenkins that "on some days," a particular nurse would refuse him his medication because of arguments that had erupted between the two.[7] *Id.* at para. 3; Blankenship Aff. at para. 4.

## III. STANDARD OF REVIEW

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment is initially responsible for identifying those portions of the factual record which it believes establish that there are no genuine issues of material fact. Once the moving party has made this showing, the opposing party must demonstrate, by reference to affidavits, depositions, answers to interrogatories, or admissions, that a triable issue of fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Should the non-moving party present a genuine issue of fact that could lead to a reasonable jury finding, the motion for summary judgment must be denied. *Id.*

---

**5.** Jenkins was at the Newport News jail from February 25, 1991 through March 7, 1991. While the defendants' counsel stated during oral argument that Jenkins took his medication while at the facility, neither side produced records from the facility indicating whether or not the decedent took his medication.

**6.** The parties do not dispute that the aforementioned seizures occurred. The plaintiff, however, asserts that Jenkins suffered an unspecified number of additional seizures and refers to a 1990 letter written by Dr. Mendez, an ear, nose and throat specialist at St. Brides, to Dr. Ibarra. *See* Pl. ex. 9 (attached to 9/3/93 Reply Brief). The letter states that the decedent complained of having suffered four seizures in the past year, the last of which occurred in July of 1990. When the defendants attempted to inquire about these additional undocumented seizures through a set of Request for Admissions, the plaintiff failed to reply. Therefore, the court will not consider the plaintiff's unsupported claims of additional seizures.

**7.** This nurse appears to be Nurse McWaters. While the records establish that she disciplined Jenkins for inappropriate behavior, the records do not establish that Jenkins was ever denied his medication.

## IV. DISCUSSION

■ The plaintiff asserts that the defendants violated Jenkins' rights under the provisions of 42 U.S.C. § 1983 by showing deliberate indifference to his medical condition. Pursuant to 42 U.S.C. § 1983, deliberate indifference amounts to a constitutional violation of the prisoner's rights under the cruel and unusual punishment clause of the eighth amendment. See *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). In order to make this showing, the plaintiff must prove that the treatment by the health care provider was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir.1990).

■ Deliberate indifference may be shown by either actual intent or reckless disregard of a substantial risk of danger that is either known to the defendant or which would be readily apparent to a reasonable person in the defendant's position. Mere negligence or malpractice, however, does not violate the eighth amendment. *Id*, *See also Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir.1977) (even if doctor was negligent in diagnosing illness, failure to exercise sound medical judgment does not amount to deliberate indifference to medical needs).

In *Miltier*, the decedent, who began complaining of dizziness, shortness of breath and blackouts shortly after her arrival, was treated by a number of the defendant doctors and nurses. Most of the defendants either ignored the decedent's complaints or failed to follow through with recommendations that she receive cardiac treatment. In reversing the lower court's granting of summary judgment, the court held that a triable issue of fact existed as to whether the defendants showed deliberate indifference in their care for the decedent. *Id.* at 852–54. *See also Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974) (motion to dismiss denied where plaintiff alleged deliberate indifference by doctors who discarded prisoner's ear and sewed stump together rather than reattach ear).

■ In the instant case, the plaintiff asserts that the defendants acted with deliberate indifference to Jenkins' medical condition by not taking other actions to ensure that he took his medication. The plaintiff maintains that, given Jenkins' mental limitations and his medical history at St. Brides (i.e. low level blood screens, number of seizures and sporadic medication ingestion), the defendants should have taken other measures to ensure that he took his medication. The plaintiff suggests that, at the very least, the defendants could have remedied the problem by placing Jenkins on the HS list, thereby ensuring that a prison guard delivered the medication directly to Jenkins' cell.

Contrary to the plaintiff's assertions, the court concludes that the facts in the instant case could not lead a reasonable jury to conclude that any of the defendants acted with deliberate indifference to Jenkins' medical condition. With regard to Dr. Ibarra, the record shows that he took active measures to monitor Jenkins' condition. Dr. Ibarra monitored regular blood samples taken from Jenkins, counseled him about the importance of taking his medication and altered his regimen so as to make it easier for Jenkins to follow. While Jenkins suffered several seizures and showed low levels of medication in his blood, Dr. Ibarra considered Jenkins' condition to have been stable.[8] Dr. Ibarra further concluded that Jenkins had the mental capacity to continue following his daily regimen. Given Jenkins' frequent visits for medical treatment, and his medication ingestion ratio (over an 85% average during his three years at St. Brides), such a conclusion does not appear to have been the product of deliberate indifference. While the plaintiff may disagree with Dr. Ibarra's assessment and treatment of Jenkins, such disagreement does not support a finding of deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240 (9th Cir.1989); *see also Wester v. Jones*, 554 F.2d at 1286.

8. As defendants' counsel noted during oral argument, Jenkins suffered as many as 32 seizures in one day prior to his entry at St. Brides. *See* Progress Note of 7/6/88. Prior to his death, Jenkins had suffered no more than 3 seizures over the course of thirty-eight months at St. Brides.

■ With regard to the defendant nurses, the record fails to support the plaintiff's assertions that they acted with deliberate indifference to Jenkins' condition. The nurses primary contact with Jenkins occurred when they assisted Dr. Ibarra (and other physicians) in treating Jenkins and when they administered his medication at the pill window. Given the nurses limited contact with Jenkins, and their agreement with Dr. Ibarra that he was capable of following his seizure-preventing regimen, the plaintiff has failed to come forward with enough evidence to establish a triable issue of deliberate indifference on their part. As for the allegations that one of the defendant nurses refused to provide Jenkins his medication, these statements, even when accepted, appear to relate to isolated incidents.

## V. CONCLUSION

The plaintiff's decedent has failed to bring forth sufficient evidence that could shock the conscience of a reasonable jury and lead to a finding of deliberate indifference on the part of the defendants. For these reasons, the defendants' motion for summary judgment will be GRANTED and this case shall be stricken from the docket.

The clerk is DIRECTED to send a copy of this order to plaintiff and to counsel for the defendants.

It is so ORDERED.