**Elton D. DONAHUE, Plaintiff,**

v.

**Raymond E. MAYNARD, Director, Kansas State Penitentiary, Lansing, Kansas, et al., Defendants.**

Civ. No. 75–350–C3.

United States District Court, D. Kansas.

July 5, 1977.

**48**

Elton D. Donahue, pro se.

Curt T. Schneider, Atty. Gen., Roger M. Theis, Asst. Atty. Gen., State of Kansas, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is a civil rights action in which the plaintiff, an inmate of the Kansas State Penitentiary, Lansing, Kansas, [KSP], seeks a judgment against the defendant or his subordinates for alleged violations of his constitutional rights. Judge Earl E. O'Connor of this Court has determined that plaintiff's claims may state a cause of action under 42 U.S.C. § 1983 for infliction of cruel and unusual punishment. We have jurisdiction of the subject matter pursuant to 28 U.S.C. § 1343(3). Plaintiff has heretofore been granted leave to proceed in this matter in forma pauperis. 28 U.S.C. § 1915. The Court now has considered the papers and pleadings of the parties, and has conducted a trial of the issues joined. It is ready for final disposition.

The record does not reflect who it is plaintiff is suing in this action. Certainly no evidence has been adduced of Raymond Maynard's role in the incidents related. Nor has plaintiff revealed to the Court the measure of relief he would wish us to award. These matters alone might convince the Court that this action should not proceed further. However, the evidence has been considered and a ruling on the merits is therefore appropriate.

The plaintiff, as we have noted, is an inmate of KSP and confined in the Adjustment and Treatment Unit [A & T] of that facility. A & T is a maximum security unit used for incarceration and segregation of prisoners who cannot or will not mix well with the general prison population. Plaintiff presently is serving three concurrent life terms of incarceration and five concurrent terms of five to twenty years. He has a long list of grievous offenses, including two convictions apiece for aggravated kidnapping, rape, and robbery. He also has one conviction for aggravated sodomy and one for voluntary manslaughter, the latter arising from an incident occurring at the penitentiary.

Plaintiff complains of three incidences which he feels show that he is, or has been, subjected to cruel and unusual punishment by state officials in violation of the Eighth Amendment. The first is that he has been denied needed medical assistance or attention when requested of prison

officials. He does not specify the particular dates these requests and denials were made, but appears to assert that it has been ongoing. He does, however, claim such a denial following an altercation with prison guards on or about December 19, 1975. The State has reproduced for our consideration the medical log showing plaintiff's visits to the KSP hospital, including the sick-call record, doctor's order sheets, and nurse's notes. It reveals that from July 26, 1975, to August 27, 1975, plaintiff was an inpatient of the hospital for treatment of a sprained or broken right ankle. During this time he had constant care and attention. He complains now that the ankle was not treated properly. However, this is not a constitutional claim as long as the record shows that he. has in fact received treatment for the injury. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The hospital records further reflect that between September 3, 1975, through January 21, 1976, plaintiff visited the hospital or was seen by medical personnel on nineteen separate occasions. At these sessions, plaintiff was treated for his ankle injury, a toothache, chest pain, a stuffy nose, nerves, and mace burns to his face and eyes. The mace burns were the result of the altercation with prison officials noted above. Other than plaintiff's own bald allegations, there is no evidence that plaintiff ever has been denied medical attention or treatment for whatever his ailment. The record detailed above is sufficient proof that plaintiff's claim is frivolous and unjustified.

The second incident complained of is the altercation of December 19, 1975. On that date plaintiff had been calling out to prison guards for medical attention and had become frustrated at their slow response. One Officer Dees eventually attended to the plaintiff, but when he approached plaintiff's cell the latter threw water in his face. Officer Dees retreated and later returned with four other officers. The intended purpose was to remove plaintiff from his cell, which was on the South Wing, A & T, to the East Wing, which was reserved for disciplinary segregation. Five guards were assigned the task because plaintiff was considered a security risk. When plaintiff stepped out of his cell a scuffle ensued, the cause of which is in dispute. An inmate-witness on behalf of the plaintiff testified that one of the officers struck plaintiff on the back of the neck, driving him to the floor of the walkway in front of his cell. Two officers who were at the scene testified that no officer struck the plaintiff, but that immediately upon his leaving the cell the plaintiff hit one Officer Meredith above his right eye. The officers then responded by forcing plaintiff to the floor, spraying mace in his face, handcuffing him, and escorting him to the East Wing lockup. The evidence is that the plaintiff stood six feet, two inches tall at the time, and weighed approximately 186 pounds. All five security officers struggled to control the plaintiff during the scuffle outside his cell, indicating his strong resistance to their authority. The single witness who testified that an officer struck first does not stand the test of credibility. Two officers with a view testified to the contrary. One other witness called by the plaintiff, Anthony Garrett, failed to see an officer strike the first blows, although he was able to see the scuffle. Even had plaintiff proved his theory, all that could be found is that he was the victim of a common law battery. Such a claim, although suitable for a cause of action in State courts, does not state a claim under the Eighth Amendment or the Civil Rights Act. See *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973). As to the struggle itself, we are of the firm opinion that prison personnel must be free to deal firmly with uncontrolled situations as they arise to maintain order, discipline, and preserve the security of inmates as well as of officers. *Bethea v. Crouse*, 417 F.2d 504 (10th Cir. 1969). There is no indication here that the officers were using so much more force than necessary in the situation as to "shock" our conscience and constitute cruel and unusual punishment. Plaintiff feels the officers were too rough, but the purpose was to quell his uncontrolled rage and insubordination. The medical records indicate he suffered no more than mace burns

**50**

to his face. Under these circumstances, we cannot find a constitutional violation.

 The last incident complained of by the plaintiff is an alleged failure of prison authorities to flush out his toilet in the East Wing cell where he supposedly spent the nine days immediately following the above altercation. KSP policy on the East Wing is that the guards control toilet flushing in individual cells if it is determined that the particular inmate is abusing this facility. They do this by disconnecting the inmate's control mechanism, and using one themselves from without the cell. Plaintiff claims this sanction was imposed in his case, and that it was not done for nine days despite his requests, resulting in a great stench. However, no other witness in this case so testified. Indeed, those prison officers who would have known of such a situation testified they knew nothing about it, and that there was no stench in the East Wing at any time during December, 1975. Exhibit Number 4 in evidence further reflects that plaintiff was not in the East Wing on December 23, 1975, just four days after he was supposed to have been placed there, but rather was back in the South Wing. Under the circumstances, we cannot accept the contention that he was mistreated in the manner described for nine days in the East Wing.

There are also allegations of the plaintiff found in the file that he was handcuffed all night on the night of December 19, 1975, and that he was deprived of personal property and toiletries for an extended period of time. However, when afforded the opportunity to present proof of these allegations, plaintiff failed to do so. The Court also allowed plaintiff considerable time to present exhibits in support of his contentions, and held hearings on two occasions to assist their production. Plaintiff nevertheless failed to take advantage of the opportunity. We therefore find that this case has been fairly and fully heard, and that plaintiff has wholly failed to prove his cause of action under 42 U.S.C. § 1983, and the Eighth Amendment to the United States Constitution.

IT IS THEREFORE ORDERED that judgment be entered in this case in favor of the defendants, and against the plaintiff, and that all claims for relief be, and the same are hereby, Denied.

IT IS FURTHER ORDERED that all costs of this action be assessed against the plaintiff.