**George MARTINEZ, Plaintiff,**

v.

**Henry ROSADO and Stephen Dalsheim, Individually and as Superintendent of the Ossining Correctional Facility, Defendants.**

**78 CIV. 4069.**

United States District Court,
S. D. New York.

July 13, 1979.

Brooklyn Legal Services Corp., Brooklyn, N. Y., for plaintiff; John C. Gray, Jr., Lloyd Constantine, Brooklyn, N. Y., David Seth Michaels, New York City, of counsel.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendants; Paul E. Milbauer, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff George Martinez, a New York State prisoner, brought this suit against defendants Henry Rosado, an official at the Ossining Correctional Facility ("Ossining"), and Stephen Dalsheim, the Superintendent of that Facility, for damages allegedly sustained when Rosado struck plaintiff during his incarceration at Ossining. Alleging a cause of action under 42 U.S.C., section 1983, plaintiff argues that defendants de-prived him of federal constitutional rights.[1] Defendants now move for summary judgment dismissing the second amended complaint. The detailed affidavits are not controverted by plaintiff, who relies upon the allegations of his verified amended pleading.[2]

The complaint alleges that on April 27, 1978, plaintiff was sent by his prison supervisor to obtain paper from Ossining's "jobbing shop" and that while attempting to complete his assignment he was confronted by Rosado, who taunted him and, without provocation, seized and beat him severely. Rosado's affidavit rebuts these statements in detail. He asserts that facility rules prohibit an inmate from being in the jobbing shop unless he has a proper pass, which plaintiff Martinez did not have on April 27. Rosado asked him to leave the area, and when Martinez refused Rosado placed him in "keeplock status" (confined to his cell) and ordered him to relinquish possession of keys to the state vehicle that he drove to the jobbing shop. Upon plaintiff's refusal to hand over the keys, Rosado used force to subdue him. At a subsequent "Superintendent's Proceeding" plaintiff admitted that he had refused to obey the direct order given by Rosado to surrender the keys.[3]

The verified complaint also states that as a direct result of the incident of April 27, plaintiff was hospitalized, spent a number of days in prison infirmaries thereafter, and suffered permanent injuries, including recurring kidney pain that continues to require treatment from urologists. Defendant Rosado's affidavit alleges that he only used "reasonable force" to subdue the inmate. The official report of the registered nurse who treated both men on the day of

---

1. Specifically, plaintiff claims that the guard's conduct was "shocking to the conscience" and thereby constituted a cruel and unusual punishment, *see Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Williams v. Vincent,* 508 F.2d 541, 543–44, 546 (2d Cir. 1974), and deprived him of liberty without due process of law, *see Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Plaintiff also sues for assault and battery and other state law causes of action.

2. *Cf. Albert Dickinson Co. v. Mellos Peanut Co.,* 179 F.2d 265, 268 (7th Cir. 1950) (verified complaint may be treated as affidavit if based on personal knowledge); 6 Moore's Federal Practice ¶ 56.11[3], at 56–249 to 56–252 (1976) (same).

3. Def.Exhs. C & D.

the incident indicates that her examination of Martinez revealed "no abnormality . . on trunk or extremities; slight redness of right wrist; no deformity, redness or swelling . . . of scrotal area." [4]

■ As Judge Friendly observed in *Johnson v. Glick*,[5] the Eighth Amendment, as applied to the States by the Fourteenth Amendment, prohibits unreasonable and excessive acts committed by prison officials and guards that are "deliberately administered for a penal and disciplinary purpose." [6] Although some courts have relied on *Glick* to find a constitutional right of prisoners "to be free from unprovoked attack," [7] the decision cautions that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." [8] The majority of cases support a stringent rule: in striking inmates, prison guards violate prisoner's Eighth Amendment rights only when (1) they deliberately use force with the intention of causing severe injury *and* (2) such force was not related to the guard's perceived duties to maintain order and enforce prison rules.[9]

■ The issue in the present case is whether, resolving all disputed fact assertions and drawing all reasonable inferences in favor of plaintiff, against whom summary judgment is sought,[10] there is any violation of the prisoner's constitutional rights. Assuming, without deciding, that an issue of fact exists with respect to the guard's intent to use force that would cause great injury to the prisoner, the Court is convinced that the evidence conclusively establishes that the plaintiff cannot meet the second prong of the test. While plaintiff maintains that the incident was "unprovoked" or "unjustified," his assertion is no more than a conclusory allegation that is negated by his own admissions and decisively rebutted by the defendants' detailed affi-

4. Def.Exh. B.

5. 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

6. *Id.* at 1032 (dictum). *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (infliction of "unnecessary suffering is inconsistent with contemporary standards of decency" and, therefore, violates prisoners' Eighth Amendment rights).

7. *Vargas v. Correa,* 416 F.Supp. 266, 269 (S.D. N.Y.1976). *See Grillo v. Sielaff,* 414 F.Supp. 272 (N.D.Ill.1976). This is an unnecessary expansion of *Glick,* which dealt with prison abuse of pretrial detainees, whose rights are greater than those of prisoners convicted of a crime. *Bell v. Wolfish,* ── U.S. ──, ──, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (Stevens, J., dissenting). Moreover, Judge Friendly stated that "although a spontaneous attack by a guard is 'cruel' and, we hope, 'unusual,' it does not fit any ordinary concept of 'punishment.'" 481 F.2d at 1032 (quoted in *Hernandez v. Lattimore,* No. 78–2098, slip op. at 2902 (2d Cir. June 7, 1979)).

8. 481 F.2d at 1033. A number of other courts have agreed that "[a] single punch in the face by a prison guard does not constitute cruel and unusual punishment." *Sheffey v. Greer,* 391 F.Supp. 1044, 1046 (E.D.Ill.1975). *See Donahue v. Maynard,* 437 F.Supp. 47 (D.Kan.1977) (mace burns); *Fisher v. Turner,* 335 F.Supp. 577 (D.Utah 1972) (guard's slamming door on inmate and hitting him with fist); *Foster v. Jacob,* 297 F.Supp. 299 (C.D.Cal.1969) (striking prisoner during argument); *Cullum v. California Dep't of Corrections,* 267 F.Supp. 524 (N.D. Cal.1967) (striking prisoner several times while removing him from mess line). *Cf. Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (certain infractions "de minimis" and therefore not actionable under Eighth Amendment); *Boston v. Stanton,* 450 F.Supp. 1049 (W.D.Mo.1978) (similar).

9. *See Arroyo v. Schaefer,* 548 F.2d 47, 49 (2d Cir. 1977) (violation of prisoner's Eighth Amendment rights occurs when there are "'circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of [the guard's] conduct for those under his control or dependent upon him'" (quoting *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir. 1974)); *Tolbert v. Bragan,* 451 F.2d 1020, 1020 (5th Cir. 1971) (per curiam) ("Severe physical abuse of prisoners by their keepers without cause or provocation is actionable under the Civil Rights Act.") *McCargo v. Mister,* 462 F.Supp. 813 (D.Md.1978); *Suits v. Lynch,* 437 F.Supp. 38 (D.Kan.1977); *Landman v. Royster,* 333 F.Supp. 621, 646–47 (E.D.Va. 1971). *Cf. Estelle v. Gamble,* 429 U.S. 97, 102–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

10. *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551 (2d Cir. 1977).

davits.[11] Rosado's statements that plaintiff flatly refused to obey his direct orders to leave the jobbing shop area and relinquish keys to a state vehicle are unrefuted by plaintiff and are consistent with the version of events described in broad outline by the complaint and, with greater particularity, in the report of the Superintendent's Proceeding. Indeed, plaintiff at the Proceeding admitted his failure to follow the guard's orders to leave the jobbing shop area and to give him the keys. This admission is attested to by his own signature.[12]

The Court has no judgment as to the wisdom of Rosado's conduct but finds that his actions were not unrelated to his perceived responsibilities to enforce rules of the prison and that such force as was used was calculated to compel compliance with orders he was empowered to give to inmates.[13] Accordingly, summary judgment is granted to defendants.[14]

---

11. *Cf. Royal Indem. Co. v. Westinghouse Elec. Corp.*, 385 F.Supp. 520 (S.D.N.Y.1974).

12. Exhibit D is the "recording sheet" for the Superintendent's Proceeding; it contains a signed admission by plaintiff to two of the four charges pressed subsequent to the incident with Rosado, including the charge that plaintiff refused to obey a direct order made by the guard.

13. *Accord, Patricia B. v. Jones,* 454 F.Supp. 18, 21 (W.D.Pa.1978) (dragging inmates 35 feet across floor to maintain order in mental institution); *Suits v. Lynch,* 437 F.Supp. 38 (D.Kan. 1977) (force justified to compel inmate to follow order to return to cell).

14. In dismissing plaintiff's federal claims the Court, in its discretion, also dismisses the pendent state claims. *Federman v. Empire Fire & Marine Ins. Co.,* 597 F.2d 798 (2d Cir. 1979).