**Mitchell KOPEC, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, Dr. Raymond Broaddus, Robert W. Spence, Dr. Barry Scheinfeld and Francesco Karcnik, M.D., Defendants.**

**No. 90 Civ. 0236 (WK).**

United States District Court, S.D. New York.

June 21, 1990.

**464**

Amy I. Don, Michael Rikon, P.C., New York City, for Mitchell Kopec.

Sue Rosenshein, Asst. Atty. Gen., New York City, for Thomas A. Coughlin, III, Dr. Raymond Broaddus, Robert W. Spence and Francesco Karcnik, M.D.

Michael J. Asta, Schiavetti, BeVito, Begos and Nicholson, New York City, for Dr. Scheinfeld.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, defendants Thomas A. Coughlin, III, Dr. Raymond Broaddus, Robert W. Spence, Dr. Francesco Karcnik, and Dr. Barry Scheinfeld move to dismiss the complaint. For the reasons which follow, we grant their motions.

### BACKGROUND

Plaintiff, who from February 1987 to February 1990 was in the custody of the New York State Department of Correctional Services, alleges that defendants in their personal capacities violated his Eighth and Fourteenth Amendment rights by failing promptly to provide him with a prosthesis. We here summarize the facts alleged in the amended complaint, coupled with certain uncontroverted facts brought to our attention by defendants.[1]

In 1960, plaintiff's right leg was amputated above the knee as a result of injuries sustained in an automobile accident. He was fitted for a prosthesis in 1961. Over the years, he was fitted several other times as different artificial limbs wore out.

Plaintiff was arrested in March 1986, and was incarcerated at the Queens House of Detention. At the time of his arrest, he was not wearing a prosthesis. In May 1986, a doctor at the Kings County Hospital Center wrote plaintiff a prescription for a prosthesis and a pair of orthopedic shoes.

In July 1987, soon after he was transferred to the Mid–Orange Correctional Facility, plaintiff filed a grievance stating that he had not yet received a prosthesis. Defendant Karcnik, a physician who worked at Mid–Orange, wrote a memorandum to Joseph Snow, Mid–Orange's Superintendent, stating his belief that plaintiff had destroyed previous prostheses. He also stated that he had set up an appointment for plaintiff with defendant Scheinfeld, a physiatrist who ministered to patients at Eastern New York Correctional Facility, but was paid by Medicaid. Scheinfeld was asked to determine plaintiff's need for a new prosthesis. After examining plaintiff, he stated his belief that plaintiff would "benefit" from a prosthesis.

---

**1.** We incorporate from defendants' submissions the dates plaintiff was incarcerated at various prisons, as well as Dr. Scheinfeld's written diagnoses and prescriptions.

Notwithstanding Scheinfeld's opinion, the Central Office Review Committee of the Mid–Orange Correctional Facility formally denied plaintiff's request to have his prescription filled, concluding that plaintiff was "fully functional" with the crutches he had been using and that there was no evidence that a prosthesis would be an improvement over the crutches. Plaintiff then appealed to the Medical Review Board of the State Commission of Corrections. In January 1988, the Review Board held that the original prescription for a prosthesis and shoes should be filled. The Board also called for a review of plaintiff's medical history in order to determine why a durable prosthesis could not be made for him.[2] John J. McNulty, Jr., Commissioner and Chairman of the Review Board, informed defendant Coughlin, Commissioner of the New York State Department of Correctional Services, of the Board's decision. The Department of Correctional Services asked Scheinfeld and Karcnik to help implement the Board's decision. Karcnik sent a memorandum to plaintiff asking why his previous prostheses had worn out as quickly as they had. He also asked plaintiff to locate as many parts of his previous prostheses as he could. The complaint does not state what, if any, action plaintiff took with respect to these queries.

Plaintiff was transferred to the Clinton Correctional Facility in June 1988. In October 1988, defendant Spence, Clinton's Health Services Administrator, made arrangements to have plaintiff's crutches fixed. Plaintiff wrote to defendants Spence and Broaddus, Assistant Commissioner for Health Services, asking that he be given a prosthesis. Spence wrote back, stating that plaintiff would be evaluated at the next orthotic clinic to be held at Clinton and, if deemed necessary, fitted for a prosthesis.

The Department of Correctional Services gave plaintiff a prosthesis in March 1989. The prosthesis did not meet the specifications of the original prescription, and caused plaintiff pain and discomfort.

## DISCUSSION

■ We note at the outset that plaintiff asserts no claim against the Department of Correctional Services for negligence in its treatment of him, but asserts separate claims against five individuals in their personal capacities. In order to state a claim against any of the defendants, the plaintiff must allege that such defendant's conduct evinced "deliberate indifference" to his "serious medical needs."[3] *Estelle v. Gamble* (1976) 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251. A mere "complaint that a physician has been negligent in diagnosing or treating a medical condition" does not constitute sufficient grounds for an Eighth Amendment claim. *Id.* In order to avoid dismissal, plaintiff must allege conduct that "shocks the conscience."[4] *Williams v. Vincent* (2d Cir.1974) 508 F.2d

---

**2.** Plaintiff alleges that the Board "reversed" the Central Office's decision and "ordered" that plaintiff's prior prescription be filled. Defendants assert that the Board lacks authority to issue orders, and that the Board's role is statutorily limited to advising and making non-binding recommendations.

**3.** *Williams v. Vincent* (2d Cir.1974) 508 F.2d 541, is an example of an adequately stated deliberate indifference claim. In *Williams,* plaintiff alleged that after telling him that "he did not need his ear," defendant doctors proceeded to throw the severed portion of his ear in the trash can and then stitched the stump of his ear, rather than trying to sew on the severed portion. *Id.* at 544. For examples of insufficiently supported claims, *see, e.g., Estelle v. Gamble,* (1976) 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (upheld district court's dismissal of claim, stat-

ing that defendants' failure to perform X-rays or to use other diagnostic techniques does not support a § 1983 claim for cruel and unusual punishment); *United States ex rel. Hyde v. McGinnis,* (2d Cir.1970) 429 F.2d 864 (affirmed dismissal of plaintiff's § 1983 claim in which plaintiff alleged that despite his protests that the liquid form of the drug prescribed for him was ineffective and provided no relief, the defendant prison officials denied plaintiff's request for the pill form).

**4.** *See also, United States ex rel. Hyde v. McGinnis* (2d Cir.1970) 429 F.2d 864, 866 ("[while] insufficient or improper medical treatment may, in aggravated cases, state a claim under 42 U.S.C. § 1983, ... we have also recognized that the conduct should be so harmful that it can properly be characterized as a barbarous act that shocks the conscience." (citations omitted)).

**466**

541, 544. With this in mind, we now review the alleged acts and omissions of each defendant.

A. Scheinfeld

■ Scheinfeld, as a doctor compensated by Medicaid rather than the state prison system, was not an employee of the Department of Correctional Services when he examined plaintiff. He is not alleged to have had any authority to order a prosthesis for plaintiff. However, he did state his belief that plaintiff would "benefit" from a prosthesis. He later also recommended that new cuffs be placed on plaintiff's crutches. His conduct hardly "shocks the conscience" or manifests "deliberate indifference" to plaintiff's medical needs. Indeed, his diagnoses reflect interest in, if not concern for, plaintiff's situation. We therefore dismiss the claim against Dr. Scheinfeld.

B. Karcnik

■ During the one year plaintiff was incarcerated at Mid–Orange, Karcnik set up an appointment for him with Scheinfeld and sent a memorandum to plaintiff requesting information about plaintiff's previous prostheses. Neither of these actions shocks the conscience or manifests deliberate indifference. At worst, Karcnik's failure to initiate procedures for getting plaintiff a prosthesis was negligent in light of the opinions of the King's County Hospital Center, Scheinfeld and the Review Board. This act of omission does not rise to the level of "deliberate" indifference.[5] *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292, ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Accordingly, we dismiss the claim against Dr. Karcnik.

C. Spence

■ Plaintiff also fails to allege facts indicating deliberate indifference by Spence. Indeed, Spence took steps in order to remedy plaintiff's situation. He made arrangements to correct problems with plaintiff's crutches. He also informed plaintiff that he would arrange for a prosthesis should one be deemed necessary at plaintiff's next medical evaluation. In light of these allegations and the applicable standards, we dismiss the claim against Spence.

D. Broaddus

■ The only allegation made against Broaddus is that he failed to respond affirmatively to the plaintiff's letter requesting help in getting a prosthesis. There has been no allegation that Broaddus evinced deliberate indifference to plaintiff's medical needs. Indeed, a failure to respond to a single letter can hardly be said to shock the conscience or to manifest deliberate indifference. We thus dismiss the claim against Dr. Broaddus.

E. Coughlin

■ The only allegation levied against Coughlin is that he was informed of the Review Board's decision. But mere notice does not give rise to a § 1983 claim against Coughlin in his individual capacity. We therefore dismiss plaintiff's claim against Coughlin.

CONCLUSION

For the foregoing reasons, we hereby grant defendants' motion to dismiss the plaintiff's complaint.

SO ORDERED.

---

**5.** Plaintiff relies on *Young v. Harris,* (1981) 509 F.Supp. 1111, stating that that case is "on point." An important distinction exists, however, in that when the court rendered its decision in *Young,* the *pro se* plaintiff therein had not yet received the leg brace which he had been demanding from the defendant prison authorities. He was thus seeking an injunction from the court requiring defendants to provide him with a brace, rather than only demanding money damages as is this plaintiff, who already has received a prosthesis.