Ronald **DAVIDSON**, Plaintiff,

v.

Linda **HARRIS**, M.D.; William Flynn, M.D.; Unknown Medical Personnel 1–5; Unknown Physicians 1–5; Defendants.

No. 95–CV–549C.

United States District Court,
W.D. New York.

Feb. 12, 1997.

Ronald Davidson, Auburn, NY, pro se.

William Lonergan, Office of Atty. Gen., Buffalo, NY, Lynn S. Edelman, County of Erie, Dept. of Law, Buffalo, NY, for defendants.

## DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Ronald Davidson, an inmate at Attica Correctional Facility at the time of the events giving rise to this claim, brings this civil rights action under 42 U.S.C. § 1983, alleging that defendants and other medical personnel at the Erie County Medical Center ("ECMC") deprived him of medical attention in violation of his constitutional rights. Specifically, he claims that the defendants dis-

played deliberate or malicious indifference to his serious medical needs and that the defendants delayed treatment in retaliation for plaintiff's litigiousness.

There are currently five motions pending in this case. Defendants filed two motions for summary judgment (Items 11 and 23) and submitted affidavits (Items 11 and 21), memoranda of law (Items 13 and 18), and statements of undisputed facts (Items 12 and 20) in support of these motions. On February 28, 1996, the court extended the deadline in which to complete discovery until August 19, 1996.

Unfortunately, discovery did not proceed smoothly in this case, and the parties engaged in an intense dispute resulting in the filing of three additional motions. On July 10, 1996, plaintiff filed a motion for a protective order regarding the procedures for conducting a deposition that was scheduled to be taken on July 15, 1996 (Item 34). Plaintiff sought an order barring prison officials from conducting a strip search following his deposition or directing them to provide adequate provisions to conduct the deposition in a non-contact visiting room so that a strip search would not be necessary. Plaintiff's motion did not come to the court's attention, and probably not to the attention of Assistant Attorney General William Lonergan, until sometime after July 15, 1996. Consequently, on July 15, 1996, Mr. Lonergan went to Auburn Correctional Facility to conduct the noticed deposition of plaintiff. Aware of plaintiff's objections to strip searches, Mr. Lonergan arranged with prison officials for the deposition to be conducted in a non-contact visit area. Nonetheless, plaintiff refused to leave his cell and participate in the deposition. Defendants subsequently filed two separate motions to dismiss the action for failure to comply with an order of the court, pursuant to Fed.R.Civ.P. 41(b) (Items 36 and 37). The parties submitted many briefs and affidavits regarding these motions, and the authorized discovery period expired. This discovery dispute sidetracked the parties' attention such that plaintiff never responded to defendants' motions for summary judgment.

In an effort to establish an efficient manner of handling the pending motions in this case, on October 4, 1996, this court decided that further discovery was not necessary for the court to address the pending motions for summary judgment. The court directed plaintiff to respond to those motions forthwith and indicated that it would address the pending discovery dispute depending on the disposition of the summary judgment motions (Item 55). Plaintiff subsequently responded to defendants' motions for summary judgment (Items 59 and 60).

From the papers submitted in this action to date, it is undisputed that on July 8, 1995, plaintiff sustained stab wounds to his back, head and chest. Prison officials took plaintiff to the emergency room at ECMC for treatment of his wounds at approximately 12:00 p.m. on that day. Plaintiff received oxygen prior to his arrival at ECMC. Upon his arrival, plaintiff was placed on a cardiac monitor, his stab wounds were sutured and stapled, he was given antibiotics, pain killers, and oxygen, he was examined by defendant Dr. Flynn, and he was admitted to the prison ward for ongoing treatment. Plaintiff remained at ECMC until July 11, 1995.

The parties do not dispute that plaintiff was treated at ECMC for his stab wounds. The fundamental dispute is over the timing of the treatment. Specifically, plaintiff contends that defendants ignored him for many hours and delayed dispensing the oxygen and pain killers for six to eight hours. In addition, he claims that throughout his hospitalization defendants frequently ignored his requests for treatment. Further, he alleges that defendants purposefully delayed treating plaintiff in retaliation for plaintiff's reputation for being litigious. Defendants deny that they ignored plaintiff at any time, that there was any significant delay in the delivery of needed oxygen or other medications, and that their knowledge of plaintiff's proclivity to resort to the courts influenced how they treated him.

### DISCUSSION

### I. Standard for Summary Judgment

Summary judgment must be granted when the pleadings, affidavits, and any other supporting papers show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials." *Capital Imaging v. Mohawk Valley Medical Associates*, 996 F.2d 537, 541 (2d Cir.1993). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

When the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the non-movant. *Id.*, at 248–249, 106 S.Ct. at 2510–11.

### II. Deliberate Indifference to Serious Medical Needs

In order to withstand summary judgment on his claim, plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "It is only that conduct which is incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or consti-

tute[s] the 'unnecessary and wanton infliction of pain'... that rises to the level of deliberate indifference toward an inmate's serious medical needs." *Pugliese v. Cuomo,* 911 F.Supp. 58, 62 (N.D.N.Y.1996) (quoting *Estelle).* An "inadvertent failure to provide adequate medical care" does not constitute deliberate indifference. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291–92. Mere negligence in providing medical treatment or difference of opinion as to matters of medical judgment do not give rise to an Eighth Amendment claim. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.,* at 106, 97 S.Ct. at 292; *Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The U.S. Supreme Court has devised a two-pronged standard for determining whether an inmate has been the victim of deliberate indifference. *See Estelle,* 429 U.S. at 97, 97 S.Ct. at 287; *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, the alleged deprivation must be, in objective terms, sufficiently serious. *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2323–24. *See Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (standard "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"); *Archer v. Dutcher,* 733 F.2d 14, 16–17 (2d Cir.1984) ("extreme pain"); *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977) ("physical torture and lingering death"). Second, the defendant(s) must act with a sufficiently culpable state of mind. *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2323–24. A defendant does not act in a deliberately indifferent manner unless he or she knows of and disregards an excessive risk to inmate health or safety. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

In the present case, defendants contend that the plaintiff's medical records and the affidavits of Dr. Flynn and Dr. Harris demonstrate that there is no factual basis upon which a deliberate indifference claim can be maintained as a matter of law. Specifically, defendants assert that from the time of his arrival at ECMC at 12:10 p.m. on July 8, 1995, and over the course of the next 24 hours, plaintiff received continuous treatment and evaluation of his condition. They note that while he was in the emergency room, plaintiff's wounds were sutured and stapled, he was placed on a cardiac monitor, he was given oxygen, he was administered antibiotics, and he received medication for pain. In addition, defendants indicate that Dr. Flynn personally examined plaintiff, ECMC personnel took three separate sets of x-rays to ascertain the scope of plaintiff's injuries, ECMC personnel admitted plaintiff for continued treatment, and ECMC staff discharged plaintiff only after they concluded that his condition no longer required hospitalization (Item 13, pp. 4–5).

Defendants also argue that plaintiff's claim is based solely on conclusory and subjective allegations, insufficient as a matter of law. They contend that the main thrust of plaintiff's claim is that defendants did not treat him as fast as he desired or thought appropriate. They cite *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970) for the proposition that "[a] prisoner's right is to medical care—not the type or scope of medical care which he personally desires" (quoting *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir.1968)).

Plaintiff does not deny that he received treatment for his stab wounds at ECMC on July 8, 1995 through July 11, 1995, nor does he claim that he suffered any particular injury from his treatment at ECMC. The gravamen of his complaint is that defendants denied him pain medicine and oxygen for six to eight hours out of their fear or disgust of his alleged litigiousness (Item 59, p. 2). He asserts that defendants knew or should have known that this delay would cause him pain and suffering; however, he does not expressly contend that he in fact suffered in any way from the delay. Plaintiff cites two Second Circuit cases for the proposition that a five- or six-hour delay in medical care can constitute deliberate indifference to serious medical needs.

Assuming that plaintiff's factual allegations are true and that he was forced to wait six to eight hours before receiving oxygen and pain medication at ECMC, plaintiff has failed to state a cause of action of deliberate indifference to serious medical needs. Specifically, plaintiff has failed to satisfy the objective prong of the deliberate indifference standard articulated above by failing to demonstrate that the alleged deprivation was sufficiently serious. Although the court does not minimize the potential seriousness of stab wounds to the back, chest and head, plaintiff has not challenged the treatment of his stab wounds. He has neither pleaded nor demonstrated through factual affidavits that his condition was sufficiently serious to amount to "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance,* 912 F.2d at 607. Plaintiff's medical records indicate that even though there was some concern that plaintiff had a slight pneumothorax (collapsed lung), plaintiff's condition was never classified as grave or life-threatening. Defendants conducted three separate series of x-rays to ascertain the precise scope of plaintiff's injuries and consistently monitored plaintiff's condition for three days. Plaintiff's naked allegations of delay alone do not create a material fact question as to whether his condition was sufficiently serious.

The court agrees with the defendants' contention that plaintiff's allegations of delay at best may state a claim for medical malpractice, which is not a federal claim. Plaintiff has not alleged that he was denied treatment, that he did not ultimately receive appropriate treatment, or that his medical condition was not favorably resolved. He simply asserts that treatment was not rendered as quickly as he personally desired and that he was not attended to with the frequency that he felt in his lay capacity would be appropriate. The case law clearly demonstrates that in order for a claim of deliberate indifference to serious medical needs to succeed, there must be conduct so harmful that it can be properly characterized as a " 'barbarous act' " that " 'shocks the conscience.' " *McGinnis,* 429 F.2d at 866, quoting *Church v. Hegstrom,* 416 F.2d 449, 451 (2d Cir.1969); *see also, McCloud v. Delaney,* 677 F.Supp.

230, 232 (S.D.N.Y.1988) ("[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards.").

Plaintiff's naked allegations of delay and his need for oxygen and pain medication fail to meet this requirement as a matter of law. The medical records and affidavits of Dr. Flynn and Dr. Harris demonstrate that the defendants provided plaintiff with the degree of medical care consistent with his particular medical needs. Plaintiff has failed to offer any proof other than his lay opinion to demonstrate that he was denied adequate care. His subjective impression of undue delay and inadequate dispensation of oxygen and pain medication do not controvert the medical records. As any lay person is well accustomed, patients are frequently faced with delays in receiving medical care, particularly when their medical condition is not grave. Based on the facts and evidence provided by both sides, no reasonable person could find a wanton disregard or deliberate indifference of plaintiff's serious medical needs.

The court rejects plaintiff's argument that summary judgment is improper in this case since he has not had a full opportunity to carry out meaningful discovery. The medical records clearly set forth the precise medical care that plaintiff received during his stay at ECMC from July 8, 1995 to July 11, 1995. As discussed above, this evidence demonstrates that plaintiff was not suffering from a sufficiently serious medical need. The court fails to see how depositions of either of the named defendants or the specified non-party witnesses, all medical personnel at ECMC, could result in any evidence that would contradict the current record.

Although plaintiff is correct that under certain circumstances a five- or six-hour delay in medical care can constitute deliberate indifference, such a conclusion is highly fact-sensitive. In *Archer v. Dutcher,* 733 F.2d 14 (1984), cited by plaintiff in his memorandum of law in opposition to this motion, the Second Circuit reversed the lower court's summary judgment order in a deliberate indifference case because the plaintiff had raised material fact issues by both alleging and

submitting affidavits demonstrating that the defendants had delayed emergency medical aid in order to make the plaintiff suffer. The plaintiff in *Archer* was a pregnant woman who was suffering "torturous cramping and vaginal bleeding ...[and] ultimately miscarried." *Id.*, at 15. As in the present case, the district court in *Archer* concluded that the medical records and the defendants' affidavits demonstrated that the plaintiff had received extensive medical attention for her serious condition. The Court of Appeals reversed because the plaintiff's allegations demonstrated the possibility that the defendants had intentionally delayed medical care for five hours, knowing that plaintiff was in "extreme pain," for the primary purpose of making the plaintiff suffer. The five- to six-hour delay was not the determinative fact in *Archer*. Instead, the seriousness of the plaintiff's condition, the extent of her suffering, and the defendants' desire to cause the plaintiff to suffer all led to the Second Circuit's decision to reverse the summary judgment order.

The present case can be distinguished from *Archer* in two important ways. First, plaintiff has failed to allege or demonstrate that his medical condition was in any way as serious as the plaintiff's condition in *Archer*. Not only has he failed to claim that he was in "extreme pain," but he has failed to controvert defendants' evidence that his condition was never sufficiently serious while he was at ECMC. Second, plaintiff has failed to allege that the defendants delayed rendering medical care for the purpose of causing him to suffer. Had he alleged and offered support for such motives, *Archer* would have been persuasive authority for his opposition to this motion.[1] Even if plaintiff's contention that defendants delayed treating him in retaliation for his litigiousness is true, this claim is not tantamount to a claim that defendants intended for plaintiff to suffer.[2]

As for the second prong of the deliberate indifference standard, the defendants' state of mind, plaintiff has failed to demonstrate that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that they also drew the inference. *See Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. However, since state of mind is a more difficult fact issue to prove and since plaintiff did not have the opportunity to depose any of the defendants in this case, the court declines to base its finding on this prong. Nevertheless, having found that plaintiff has failed to satisfy the objective prong, the court does not have to address the subjective prong.

### III. *Retaliatory Denial of Medical Care*

In addition to his deliberate indifference claim, plaintiff has claimed that defendants delayed treating plaintiff and "stayed away" from plaintiff as much as possible in retaliation for plaintiff's reputation for being litigious. Specifically, plaintiff contends that the same six-to eight-hour delay in administering oxygen and pain medicine following his arrival in the emergency room, as well as subsequent denials of treatment during his hospitalization from July 8, 1995, through July 11, 1995, were motivated by the defendants' desire to punish plaintiff for his propensity to resort to the courts.

In his complaint, plaintiff alleges that upon entry to the ECMC emergency room, prison officials advised defendants and other medical personnel of plaintiff's propensity to resort to the courts (Item 1, ¶ 7). He further alleges that defendants were told to keep their distance from plaintiff as much as possible in order to avoid being named in a future lawsuit, and that they heeded these warnings (*Id.*, ¶¶ 8–9). He claims that defendants explicitly told him that they were ignoring him based on the prison officials' warnings (Id., ¶ 13). Plaintiff admits that after pleading

1. Plaintiff also cites *Bass v. Jackson*, 790 F.2d 260 (2d Cir.1986), for the proposition that a 5–6 hour delay can constitute deliberate indifference. This case is even less applicable to the present case because (1) the district court in Bass had dismissed the plaintiff's claim on a 12(b)(6) motion, which requires an even greater showing on the part of the defendants, and (2) the court did not address the merits of the plaintiff's claim of deliberate indifference in *Bass* except for in its recitation of the facts.

2. See below at subsection III for a more thorough discussion of plaintiff's retaliatory denial of medical care claim.

with the defendants for medical care, he told them that if he did not receive the care that he needed and to which he was entitled, he would be forced to sue, and he alleges that Dr. Harris responded by saying: "Go ahead, I have lawyers in my family and malpractice insurance" (*Id.*, ¶ 15).

■ Defendants correctly note that the federal courts approach prisoner claims of retaliatory conduct with caution. The Second Circuit has repeatedly advised that because claims of retaliation can easily be fabricated, courts should examine prisoner claims for retaliation with skepticism and care. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983).[3] The Second Circuit has further instructed the district courts that

> a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.... [A] complaint which alleges facts giving rise to a colorable suspicion of retaliation ... will support at least documentary discovery. However, if the production of all relevant documents fails to add substance to the allegations and if the relevant officials submit affidavits explaining their reasons for the challenged actions, summary judgment dismissing the complaint may be granted.
> ....

*Flaherty*, 713 F.2d at 13. In addition, it is the law in this circuit that "in order for [a] plaintiff to maintain a retaliation claim, [he] must prove that the alleged wrong would not have been taken but for the exercise of his constitutional rights." *Banks v. Mannoia*, 890 F.Supp. 95, 99 (N.D.N.Y.1995); *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir.1976).

■ The court believes that although plaintiff's complaint alleges facts giving rise to a colorable suspicion of retaliation, the

medical records and the defendants' affidavits document continuous, ongoing treatment while plaintiff was in the emergency room and throughout his stay at ECMC. The repeated care, examination, diagnostic testing, and provision of medication when medical personnel determined such medication was required necessarily defeats any inference that defendants engaged in any delay or retaliatory denial of care for any serious medical needs with which plaintiff presented. The medical records conclusively establish that rather than remaining ignored and untreated, plaintiff received a significant amount of treatment in the hours following his arrival at ECMC. If there was any delay, it was minor. Thus, the record strongly suggests that plaintiff's treatment was unaffected by anything the prison officials or anyone else said, and was dictated solely by the defendants' evaluation of plaintiff's medical needs.

The court rejects plaintiff's argument that summary judgment is inappropriate in this case since he has not had a full opportunity to carry out meaningful discovery for the same reasons discussed above. The medical records and affidavits clearly set forth the precise medical care that plaintiff received during his stay at ECMC from July 8, 1995, to July 11, 1995. The court fails to see how the depositions which plaintiff seeks to take of the defendants and certain non-party witnesses, all of whom are ECMC medical personnel, would contradict the evidence currently before the court. The court also believes that oral testimony, although arguably helpful, is not necessary to resolve this motion.

### CONCLUSION

For the foregoing reasons, this court finds that plaintiff has failed to state a claim of

---

**3.** The court acknowledges that the case authority for prisoner claims of retaliatory conduct involves claims against prison officials and rests in part on the broad discretionary power given to prison officials. Nevertheless, this court believes that the Second Circuit's instructions as to how to approach claims of retaliation are applicable to the present case, given that claims of retaliation against medical personnel of a county hospital are just as easily fabricated as claims of retaliation against prison officials. Plaintiff was brought to ECMC because he required medical attention beyond the capacity of the Attica medical facility. He should not be afforded more liberal pleading and proof requirements just because he was treated outside the prison. In addition, medical personnel should be afforded some degree of discretion based on their expertise. Finally, as explained more thoroughly above, " '[a] prisoner's right is to medical care— not the type or scope of medical care which he personally desires. ' " *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir.1970).

either deliberate indifference to serious medical needs or retaliatory denial of medical care and therefore grants defendants' motions for summary judgment (Items 11 and 23).

Because the court has granted summary judgment in this case, the remaining three pending motions involving discovery issues (Items 34, 36, and 37) are now moot. Therefore, the complaint is dismissed, and judgment shall enter for defendants.

For the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a), and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.