Reginald SONDS, Plaintiff,

v.

**ST. BARNABAS HOSPITAL CORRECTIONAL HEALTH SERVICES; the City of New York; Sumpter, Captain No. 1370; Johnson, Correction Officer No. 14488; Ocasio, Correction Officer No. 14100; Parks, Correction Officer No. 14373; Powell, Correction Officer No. 4316; Dr. Robert, Riker's Island; Adolescent Reception Detention Center; Department of Corrections; as Individuals in Their Official and Personal Capacities, the State of New York Department of Corrections, Defendants.**

No. 00 Civ. 4968(CM).

United States District Court, S.D. New York.

May 21, 2001.

Reginald Sonds, pro se.

Rose M. Weber, Assistant Corporation Counsel, Law Department of the City of New York City, Andrew Zwerling, Garbarini & Scher, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT

McMAHON, District Judge.

*Pro Se* Plaintiff Reginald Sonds sues St. Barnabas Correctional Health Services ("St.Barnabas"), the City of New York, the City of New York Department of Corrections, and various correction officers pursuant to 42 U.S.C. § 1983 for denying him necessary medical treatment while a prisoner on Riker's Island in the City of New York. Defendants St. Barnabas and the City of New York have moved to dismiss

the instant complaint. Return of service of summons and complaint were executed as to St. Barnabas, Correctional Health Services, and the City of New York on March 14, 2001.

Two separate grounds exist for dismissal of the civil rights claim asserted by plaintiff against the moving defendants, either of which is sufficient to justify granting such relief.

First, the complaint must be dismissed because the plaintiff has admitted that he failed, prior to commencing this lawsuit, to avail himself of institutional administrative procedures in order to raise his claim that he was deprived of necessary medical treatment. Decisional law makes it plain that a failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act, mandates dismissal of a complaint.

Second, plaintiff fails to state a claim for relief under 42 U.S.C. § 1983, because Plaintiff's injury does not qualify as "serious" under the objective prong of the "deliberate indifference" test. Furthermore, as to defendant St. Barnabas, plaintiff fails to allege deliberate indifference, since he admits that he received medical attention from the physicians affiliated with defendant.

## STATEMENT OF FACTS

The following factual allegations, drawn from the four corners of the complaint, are deemed true for purposes of evaluating this motion to dismiss.

At approximately 4:00 PM on July 11, 1998, plaintiff injured his finger in a cell door at the Rikers Island Adolescent Reception Detention Center, where he was being held. According to the complaint, skin was ripped off his finger, leaving it "bleeding, red and burning." The complaint alleges that Plaintiff filled out an injury report, and that he was allowed to go to the clinic at approximately 7:00 PM. Plaintiff was given a tetanus shot and his finger was bandaged.

The following day, July 12, plaintiff removed the bandage from his finger. The skin peeled off. Plaintiff thereafter went back to the clinic, where he received a second treatment, the nature of which is not specified.

Although it is not entirely clear, it seems that plaintiff is alleging that the defendants were deliberately indifferent to his medical needs in the following ways: a medical officer did not come to his cell immediately to treat his injury; there was a delay in taking plaintiff to the clinic; plaintiff's wound was not stitched; and plaintiff's finger was not x-rayed to ascertain whether he suffered from "internal bleeding or damages." The complaint does not contain any allegation of permanent disability due to the injury to plaintiff's finger.

## CONCLUSIONS OF LAW

1. *Plaintiff has not exhausted his administrative remedies.*

■ The plaintiff admits in his complaint that, prior to instituting this lawsuit, he failed to resort to institutional administrative procedures in order to protest the fact that he was allegedly denied proper medical care. This fact compels dismissal of the complaint.

■ Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all available administrative remedies before bringing suit on a federal claim. Specifically, the PLRA provides:

No action shall be brought with respect to prison conditions under section...1983 [of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). As interpreted by decisional law, this statute demands that prisoners first challenge the conditions of their confinement through the highest level of available administrative avenues prior to filing suit. *Santiago v. Meinsen*, 89 F.Supp.2d 435 (S.D.N.Y.2000). This requirement must be met where an inmate is protesting that prison officials were deliberately indifferent to his medical needs. *Id.* at 435.

New York State has procedures for filing grievances in each of its correctional facilities. *Id.* Plaintiff admits that this is so. (Compl. at II A.). Plaintiff further admits that he did not avail himself of those procedures to challenge to the purported denial of medical care to him. (Id. at II B.) Consequently, his civil rights complaint must be dismissed.

■ Plaintiff argues that he was not required to exhaust the available administrative remedies because he seeks only money damages. As the City points out in its reply letter, the Second Circuit has not yet ruled on whether the PLRA's exhaustion requirement applies where a prisoner seeks only money damages and the available administrative remedies make no provision for such relief. *Nussle v. Willette*, 224 F.3d 95, 100 n. 5 (2d Cir.2000). While there is some disagreement among the district judges in this Circuit about this issue, there is a clear trend among district court judges within the Second Circuit to find that a prisoner must exhaust his administrative remedies even where the relief he requests "cannot be awarded by the administrative body hearing the complaint." *Sulton v. Greiner*, No. Civ.A. 00–0727, 2000 WL 1809284 (S.D.N.Y. Dec.11, 2000) (Sweet, J.) (citing *Santiago*, 89 F.Supp.2d at 440; *Snider v. Melindez*, 199 F.3d 108, 114 n. 2 (2d Cir.1999)). I agree

with this trend and rule that the exhaustion requirement applies in this case.

2. *Even If Plaintiff Did Not have to Exhaust Administrative Remedies. The Complaint Would have to be dismissed.*

Even if Sonds did not have to exhaust his administrative remedies, or if he had actually done so, his complaint would have to be dismissed for failure to state a claim on which relief could be granted. Fed. R.Civ.P. 12(b)(6).

■ To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. *Johnson v. A.P. Products, Ltd.*, 934 F.Supp. 625, 626 (S.D.N.Y.1996). It is imperative that the complaint contain "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." This standard applies to civil rights claims brought pursuant to Section 1983. *Muka v. Greene County*, 101 A.D.2d 965, 477 N.Y.S.2d 444 (3d Dep't 1984). *See also Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, ¶ 1230. Thus, a complaint alleging a civil rights violation under Section 1983 must contain specific allegations of fact that demonstrate a deprivation of constitutional rights, or it will be dismissed. *Alfaro Motors Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987).

■ Broad and conclusory statements, coupled with a failure to allege the facts of the alleged offending conduct, are insufficient to state a claim. *See Pang Hung Leung v. City of New York*, 216 A.D.2d 10, 627 N.Y.S.2d 369 (1st Dep't 1995). Assertions in a complaint that are nothing more than broad, simple, vague and conclusory statements are patently in-

sufficient to support a claim under Section 1983. *Alfaro Motors*, 814 F.2d at 887. The law requires more than a "litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, (2d Cir.1987). Likewise, a generalized claim that an inmate was denied access to medical treatment will not suffice. *Green v. Portuondo*, No. CIV.A. 97–2639, 2000 WL 1808562 (S.D.N.Y. Dec.11, 2000); *Church v. Hegstrom*, 416 F.2d 449, 450 (2d Cir.1969) (complaint dismissed where there were no specific allegations that any defendants knew that treatment was required for preservation of inmate's life, that the inmate ever requested such treatment, or even that any defendant was aware of inmate's condition).

■ The basis of the plaintiff's civil rights complaint is twofold: first, that he was denied a medical treatment for his injured finger for three and one half hours because a corrections officer refused to take plaintiff in for treatment, due to the plaintiff's failure to have identification; second, that he was not given appropriate treatment. Although I must use the most liberal pleading standards because plaintiff is proceeding *pro se, see Platsky v.CIA*, 953 F.2d 26, 28 (2d Cir.1991), these allegations woefully fall short of what is necessary to state a legally sufficient claim for violation of civil rights.

■ St. Barnabas (the only moving defendant to raise this as an alternative ground for relief) suggests two reasons why it would be entitled to dismissal for failure to state a claim. First, St. Barnabas asserts that plaintiff had not alleged an essential element of a claim against the hospital under Section 1983: namely, that St. Barnabas possessed *final policymaking authority* in relation to inmate health

services and, with deliberate indifference to his medical needs, implemented a policy or custom that caused injury to him. Second, St. Barnabas contends that plaintiff's allegations do not, as a matter of law, rise to the level necessary to establish a violation of his Constitutional rights. Obviously, the first ground is peculiar to St. Barnabas alone, while the second ground would apply equally to the City—and, indeed, to the non-moving defendants.

■ St. Barnabas is correct about the pleading deficiency concerning final policymaking authority. However, on the record before me, I could not conclude anything definitive about who actually has that authority. The question of who has final policymaking authority is a question of law. *See Gordon v. County of Rockland*, 110 F.3d 886, 888–89 (2d Cir.1997) (noting that the policymaker inquiry involves a fact-specific inquiry, which should be distinguished from an issue of fact). St. Barnabas has not gone beyond the pleading to introduce into the record any laws or regulations that establish who, in fact, has final policymaking authority concerning the provision of inmate health services. I therefore cannot conclude, in a motion addressed solely to the pleadings, that plaintiff could not demonstrate that St. Barnabas in fact had the requisite final policymaking authority—although I very much doubt it to be the case.

■ However, to state a cognizable claim under 42 U.S.C. Section 1983, a plaintiff must allege conduct under color of law that deprives him or her of rights under the law and Constitution. *Dwares v. City of New York*, 985 F.2d 94, 97 (2d Cir.1993); *Bell v. Artuz*, No. Civ.A. 98–4710, 1999 WL 253607 (S.D.N.Y. Apr.29, 1999).[1] In cases where the allegation is

---

**1.** 42 U.S.C. Section 1983 provides, *inter alia,* as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or us-

denial of medical treatment, a claim is legally sufficient only when the denial qualifies as cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution. As the United States Supreme Court has held, this standard is only met when it can be established that prison officials were "deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996).

■ The standard of "deliberate indifference to serious medical needs" contains two components—one objective, one subjective. *Farmer v. Brennan,* 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wandell v. Koenigsmann,* No. Civ.A. 99–8652, 2000 WL 1036030 (S.D.N.Y. July 27, 2000). Unless both are satisfied, a prisoner's claim must be dismissed.

### 1. Objective Standard

■ First, there is an objective component, i.e., the alleged deprivation must be, in objective terms, sufficiently serious. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970. "[A] prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.' For a claim... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 832, 114 S.Ct. 1970; *Porter v. Coughlin,* 964 F.Supp. 97, 104 (W.D.N.Y.1997). *See Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st

Cir.1998) (objective component requires "grave risk of harm").

■ A medical condition is deemed "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.... The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Hunt v. Uphoff,* 199 F.3d 1220 (10th Cir.1999). Thus, if "unnecessary and wanton infliction of pain" results, or where the denial of treatment causes an inmate to suffer a lifelong handicap or permanent loss, the medical need may be considered serious. *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000). The term "sufficiently serious" has also been described as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996); *Bonner v. New York City Police Dep't,* No. Civ.A. 99–3207, 2000 WL 1171150 (S.D.N.Y. Aug.17, 2000) (fact that plaintiff suffered from discomfort and one of his fingers did not close did not constitute serious medical need); *Grant v. Burroughs,* No. Civ.A. 96–2753, 2000 WL 1277592 (S.D.N.Y. Sept.8, 2000) (even assuming plaintiff was in pain for two months, plaintiff's pain was not so severe as to constitute a serious medical condition); *Davidson v. Harris,* 960 F.Supp. 644 (W.D.N.Y.1997) (even though plaintiff was recovering from surgery for multiple stab wounds, and allegedly was denied oxygen and pain killers for six to eight hours, there was no showing of serious medical condition).

age, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...

Plaintiff has failed to plead an objectively serious injury. A bleeding finger does not pose a substantial risk of serious harm. Case law holds that the objective prong of the deliberate indifference test is not satisfied even where a finger is broken. *Henderson v. Doe,* No. Civ.A. 98–5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (holding that injury to a finger is not "sufficiently serious" because it does not produce death, degeneration or extreme pain); *Rivera v. S.B. Johnson,* No. Civ.A. 95–0845, 1996 WL 549336 (W.D.N.Y. Sept.20, 1996) (a broken finger, without more, simply does not present a condition of urgency which correspondingly merits constitutional protection). Certainly, then, a cut finger, even where skin is "ripped off," as the plaintiff alleges, does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief.

2. Subjective Standard

The second component is a subjective one, requiring a showing that the officials accused of the deprivation act with the requisite culpable mental state. *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994) This component is multi-tiered. A prison official has sufficient culpable mental state if: 1) he has actual or constructive knowledge that an inmate faces a substantial risk of serious harm, and, 2) he ignores or disregards that risk, 3) by failing to take reasonable steps to abate the harm, with such lapse constituting more than mere negligence. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970; *Cuoco v. Moritsugu,* 222 F.3d 99 (2d Cir.2000).

As the Supreme Court has stated, "deliberate indifference is a stringent standard of fault." *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1391, 137 L.Ed.2d

626 (1997). It is more than "more blameworthy than negligence," but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference requires intentional or criminally reckless conduct. *Wandell v. Koenigsmann,* No. Civ.A. 99–8652, 2000 WL 1036030 at *3 (S.D.N.Y. July 27, 2000) (citing *Farmer v. Brennan,* 511 U.S. at 835–840, 114 S.Ct. 1970).

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998); *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970) (citing *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir.1968)); *McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988) ("[t]here is no right to the medical treatment of one's choice..."). Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred. *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). As long as the medical care is adequate, there is no Eighth Amendment violation. *Wandell,* 2000 WL 1036030 at *3.

Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons. *Church v. Hegstrom,* 416 F.2d 449, 450–451 (2d Cir.1969). Federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in state tort law. *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) ("The Constitution does not command that inmates be given medical attention that judges would wish to have

for themselves.") So strong is this view that determinations of medical providers concerning the care and safety of patients are given a "presumption of correctness." *Perez v. The County of Westchester,* 83 F.Supp.2d 435, 440 (S.D.N.Y.2000) (citing *Kulak v. City of New York,* 88 F.3d 63, 77 (2d Cir.1996)).

Here again, the complaint is deficient, because there is no allegation by the plaintiff that St. Barnabas denied him any medically-necessary treatment. To the contrary, the plaintiff alleges in the complaint that he was treated within 3½ hours of his injury, had his finger soaked in a brown colored liquid, was given a tetanus shot, and had the injury bandaged. These facts undermine any claim of deliberate indifference by St. Barnabas and demonstrate that it did not willfully disregard the plaintiff's medical needs. *See also Henderson v. Doe,* No. Civ.A. 98–5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999); *Marshall v. Strack,* No. Civ.A. 96–6789, 1998 WL 118167 (S.D.N.Y. Mar.16, 1998) (defendants provided medical attention throughout plaintiff's incarceration); *Walker v. Reid,* No. Civ.A. 84–5281, 1985 WL 192 (S.D.N.Y. Jan.14, 1985) (complaint alleged that plaintiff received medical treatment for his finger injury in that medical personnel inside and outside prison facilities administered treatment to plaintiff's injured finger). To the extent that plaintiff alleges that a corrections officer caused some delay in the commencement of treatment, his claim (assuming, *arguendo,* that it rises to a constitutional level), does not lie against St. Barnabas. Moreover, concerning the alleged delay of 3½ hours between the injury and treatment, "[a]s any lay person is well accustomed, patients are frequently faced with delays in receiving medical care, particularly when, [as in this case], their medical condition is not grave." *Davidson v. Harris,* 960 F.Supp. 644, 648 (W.D.N.Y.1997).

Finally, to the extent that plaintiff alleges that he was not properly treated, or that he disagreed with the treatment given him by the doctors from St. Barnabas (for example, his claim that the doctors failed to x-ray his finger), that conduct does not rise to the level of a constitutional violation. Courts have repeatedly held that an omission of this nature does not amount to a constitutional violation, *See Rivera v. SB Johnson,* No. Civ.A. 95–0845, 1996 WL 549336 (W.D.N.Y. Sept.20, 1996) (citation omitted), and disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment. Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

### 3. *As a Matter of Law, There Has Been no Excessive Force*

In his response to the City's motion, plaintiff alleges, for the first time, that the injury to his finger resulted from excessive force on the part of prison officials at Rikers, and further that the defective cell door in which he cut his finger constituted a weapon. As no defendant has answered, plaintiff has an absolute right to amend his complaint, without seeking leave of Court. Fed.R.Civ.P. 15(a). However, assuming, *arguendo,* that plaintiff's responsive letter were deemed to assert an amendment to the complaint, the allegation would have to be dismissed.

In essence, plaintiff contends that prison officials caused him injury by having a

defective door in the facility. There is, however, no allegation in either the original complaint or in plaintiff's responsive letter (where he raises the spectre of excessive force) that any corrections officer laid hands on plaintiff, let alone that an officer deliberately shut the door on his finger. Thus, there exists no factual predicate for a claim of excessive force. Even in some situations where deliberate acts are committed by a state officer to cause harm to an inmate, courts have found no excessive force. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (prison guard's shooting of inmate in the leg during prison riot is not excessive); *Pristell v. County of Sullivan,* No. Civ.A. 91–6317, 1996 WL 11210 at *4 (S.D.N.Y. Jan. 10, 1996) (restraint of disorderly detainee resulting in fractured rib is not excessive force). Because there is no allegation whatsoever that force was used by prison guards against plaintiff, this claim also would fail.

## CONCLUSION

 The individual Corrections Officers, the Department of Corrections and "Dr. Robert" have not moved to dismiss the amended complaint. However, the court dismisses the claims against the non-moving defendants *sua sponte.* The District Court may dismiss a complaint *sua sponte* for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard. *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991). In this case, plaintiff has been heard—in his responses to the existing motion. The complaint makes identical allegations against each non-moving defendants as it does against some moving defendants. Moreover, as against the New York State Department of Corrections, the Eleventh Amendment bars plaintiff's suit.

For the above reasons, plaintiff's complaint is dismissed with prejudice as against all defendants. The Clerk of the Court is directed to close the case.